# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

December 13, 2021

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Diane Gujarati, U.S.D.J.
225 Cadman Plaza East
Brooklyn, NY 11201-1804

      *Re:*    **JGIAP RH 160 LLC v. CRI Holding Corp.,** *et al.*
            <u>**Case No.: 1:21-cv-2489 (DG) (JRC)**</u>

Dear Judge Gujarati:

      This firm represents Manda International Corp. ("Manda"), Strikeforce Mechanical Corp. ("Strikeforce"), and Angel Corrao ("Corrao") (Manda, Strikeforce, and Corrao collectively hereinafter referred to as "Defendants") in the above referenced case. The parties' efforts at mediation before the Hon. James Cho, U.S.M.J. were not successful. As such, Defendants submit this request pursuant to this Court's Individual Practice Rules for a pre-motion conference to be scheduled for the purposes of obtaining the Court's permission to file a motion to dismiss the Complaint, as it relates to the Defendants, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule").

      Plaintiff JGIAP RH 160 LLC (hereinafter the "Plaintiff"), a shell corporation which did not exist during the time period relevant to the allegations in the complaint, has taken the hackneyed tactic of trying to cloak what is nothing more than a billing dispute over construction services provided by Manda and Strikeforce with stigma-inducing Racketeer Influenced and Corrupt Organizations Act ("RICO") claims to avoid paying for the work performed. The problem for the Plaintiff is that, despite the dramatic flourishes in weaving a tale of corrupt conspiratorial acts throughout the complaint, its house of cards falls apart under the slightest wind of scrutiny blowing from the insufficiently pled claims.

      "To survive a motion to dismiss under [Rule] 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." <u>See</u> <u>Johnson v. Priceline.com, Inc.</u>, 711 F.3d 271, 275 (2d Cir. 2013). A complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and must be dismissed if it fails to allege specific facts. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) (<u>citing</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Plaintiff, therefore, must provide the factual grounds of its claims and substantially more than a "formulaic recitation of the elements of a cause of action." <u>See</u> <u>Twombly</u>, 550 U.S. at 555. The complaint must establish that defendants have plausible, rather than merely possible, liability. <u>See</u> <u>Iqbal</u>, 556 U.S. at 680. A complaint that is implausible on its face *must* be dismissed. <u>See</u> <u>Icebox-Scoops, Inc. v. Disney Enters.</u>, 520 Fed. Appx. 3, 4 (2d Cir. 2013) (emphasis added).

The Plaintiff's RICO claims against the Defendants pursuant to 18 U.S.C. §§ 1962(c) and 1962(d) – which it utilizes in this case to improperly and inappropriately break open the doors to this federal courthouse – rely on sparse, conclusory allegations that Defendants "knowingly" engaged in a scheme to defraud creditors. Tellingly, the complaint does even not allege that the Defendants communicated with the other named defendants in this case to even support the existence of any conspiracy. Therefore, the complaint must be dismissed for this reason alone.

Indeed, Plaintiff's ploy is palpably and patently a power play which is entirely devoid of merit. "[I]t is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for [alleged] fraud." See Am. Fed'n of State v. Bristol-Myers Squibb Co., 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2012) (citing Rosenson v. Mordowitz, 2012 U.S. Dist. LEXIS 120077, at *12 (S.D.N.Y. Aug. 23, 2012)). "Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." See Am. Fed'n of State, 948 F. Supp. at 345 (quoting Rosenson, 2012 U.S. Dist. LEXIS 12007, at *13).

Here, Plaintiff asserts alleged RICO violations under 18 U.S.C. §§ 1962(c) and (d). See Docket Entry 1 (hereinafter the "Compl.") at ¶¶ 125-166. "To establish a claim for a civil violation of section 1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994)). In order to plead a "pattern of racketeering," a plaintiff must plausibly allege multiple acts of racketeering activity occurring within 10 years of each other (see 18 U.S.C. § 1961(5); see also Elsevier, Inc. v. Grossman,, 2013 WL 6331839, at *9 (S.D.N.Y. Dec. 5, 2013)), and the predicate acts must be "related" and "continuous." See H.J. Inc., et al. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238-44 (1989). "Continuity" may be established through either "a closed period of repeated conduct, or [ ] past conduct that by its nature projects into the future with a threat of repetition." Id. at 241 (citation omitted); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (RICO plaintiffs "must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time) (quoting GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995))).

Here, besides the facial deficiencies noted *supra*, Plaintiff fails to allege an open-ended pattern of continuity, which exists where the defendants' predicate acts represent an ongoing way of conducting their business. See Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 406 (S.D.N.Y. 2013) (citing H.J. Inc., 492 U.S. at 243). With respect to an enterprise that is primarily legitimate, there "must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." See Kalimantano, 939 F. Supp. 2d at 406 (quoting DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001).

Plaintiff alleges in the complaint that Manda was a "holding company" of Corrao. However, Manda was formed in 1993[1] and Plaintiff makes no allegations that the alleged predicate acts are Manda's "regular way of operating." As for Strikeforce, it does not allege facts of an open-ended pattern of continuity; it has essentially alleged a single fraud that was carried out over the course of approximately eleven (11) months prior to Plaintiff's existence. This is insufficient as a matter of law. It is well-established that such an "inherently terminable" scheme cannot establish openended continuity for RICO purposes.  For example, in Cofacredit, S.A. v. Windsor Plumbing Supply Co., the Second Circuit found that Defendants' year-long mail and wire fraud scheme did not constitute open-ended continuity because it was a "discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity" rather than a regular way of doing business. See 187 F.3d at 244 (citation omitted).  The plaintiff also fails to allege open-ended continuity based upon predicate acts that imply a threat of continued criminal activity that is "inherently unlawful."  The Second Circuit has clarified that this theory only applies to "inherently unlawful" criminal activities in pursuit of "inherently unlawful" goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering. See United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995).  None of these acts are alleged here. In contrast, ordinary fraud, as *is* alleged here, is not considered "inherently unlawful" under this theory. Id. at 1111 (citing cases); see also Int'l Bhd. of Teamsters v. Carey, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("[F]raud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context." (citation omitted)), aff'd sub nom. Int'l Bhd. of Teamsters v. Blitz, 124 Fed. Appx. 41 (2d Cir. 2005); Econ. Opportunity Comm'n v. Cnty. of Nassau, 47 F. Supp. 2d 353, 366-67 (E.D.N.Y. 1999) (mail fraud, wire fraud and Hobbs Act predicates are not inherently unlawful for purposes of RICO continuity). Because Plaintiff's RICO claims are predicated solely on allegations of fraud, Plaintiff cannot establish open-ended continuity and the RICO claims fail for this reason, as well.

Nor can Plaintiff establish a pattern of racketing under a theory of "closed-ended continuity," because "close-ended continuity" hinges primarily upon the duration of the alleged predicate acts. See DeFalco, 244 F.3d at 321.  A plaintiff seeking to establish continuity under this theory must prove "a series of related predicates extending over a substantial period of time." Id. (quoting H.J. Inc., 492 U.S. at 242). It is well-settled that "[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement." See H.J. Inc., 492 U.S. at 242. Indeed, the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time'" for purposes of demonstrating closed-ended continuity. See DeFalco, 244 F.3d at 321 (citing cases). Here, the Plaintiff has alleged that the purported scheme was carried out over a period of only eleven (11) months and, therefore, close-ended continuity cannot be pled. See, e.g., Compl. ¶ 22.  Because Plaintiff has failed to allege, as required, two or more predicate acts constituting a pattern of racketeering activity, the RICO claims must be dismissed.

For the foregoing reasons, Plaintiff has failed adequately to allege a pattern of racketeering activity under RICO subsection 1962(c). Accordingly, the complaint must be dismissed.

---

[1] Defendants request that this Court take judicial notice of publicly available records from the New York State Department of State's business entity records identifying Manda's initial filing date as January 15, 1993.

Further, as raised at the September 3, 2021 pre-motion conference, Defendants contend that an additional basis to dismiss the case (whether under Rule 12(b)(1) or 12(b)(6)) exists. See Docket Entry 33. Red Hook 160 LLC, the alleged owner of the property at issue, filed a petition in the Supreme Court of the State of New York for an itemization of liens filed by Defendants against the property, essentially arguing that the amounts in the liens are not properly supported. See Exhibit A, Index No.: 513748/2021. Plaintiff has pled in this action that "RH 160 did assign to Original Lender [Churchill 160 Imlay Lender LLC], and all of Original Lender's successors and assigns, "all plans and specifications for any work performed at the Premises *and all other agreements* (including, but not limited to, those with architects, contractors, construction managers, suppliers and the like), plans and specifications and records *relating to* the construction, development, use, *ownership,* operation and/or maintenance of the Project." See Compl. ¶ 31. (emphasis added).

Further, Plaintiff has pled that Original Lender assigned "the Mortgage Loan, together with Original Lender's right, title, and interest in and to the Mortgage Loan Agreement and *all ancillary agreements,* including the Assignment Agreement, to MAM 160 Imlay Lender LLC." Id. ¶ 32. (emphasis added). Plaintiff alleges that "MAM assigned the Mortgage the Mortgage Loan, together with all MAM's right, title, and interest in and to the Mortgage Loan Agreement *and all ancillary agreements,* including the Assignment Agreement, to Lender." Id. ¶ 33. (emphasis added).

Under Colorado River, *infra*, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

Based upon the explicit pleadings in this case relating to ownership (as emphasized above) Plaintiff contends it can claim aggrieved status because of Defendants (and co-defendants') alleged conduct in conspiring to submit fraudulent invoices. That is, Plaintiff states that Defendants' invoices are the product of fraud and are fictitious. See Compl. ¶¶ 86-108. Yet, the "owner" (Red Hook 160 Imlay LLC) is essentially disputing the same claimed amounts: where it contends that the lien amounts are fraudulent because they are, as alleged, unsupported. The Plaintiff here takes the additional step of claiming the alleged fraud has harmed it. Based on these contradictory positions, Defendants contend that this Court should abstain from exercising jurisdiction because the issue of the legitimacy of the invoices (based on Plaintiff's and Red Hook 160 Imlay LLC's perception) is in dispute. In fact, Red Hook 160 Imlay LLC's petition has been fully submitted for decision. See Exhibit A.

Additionally, given the choice of wording regarding the assignment that Plaintiff pled in ¶¶ 30-31 of the Complaint (as emphasized above) Defendants contend Plaintiff does not have standing to bring this action where the "owner" of the property is in state court attacking the legitimacy of the same invoices.

Finally, since the RICO claims cannot survive Defendants' anticipated motion to dismiss, all that remains are the plaintiff's state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), this Court should decline to exercise supplemental jurisdiction over these non-federal claims. The Second Circuit has held that while section 1367(c) is permissive, rather than mandatory, "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state law claims." See Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC, 414 Fed. Appx. 334, 337 (2d Cir. 2011).

For the foregoing reasons, Defendants should be granted leave to move this Court for an Order dismissing the complaint. Defendants thank this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
       December 13, 2021                   Respectfully submitted,

                                             **MILMAN LABUDA LAW GROUP PLLC**

                                              _____/s_____
                                              Michael J. Mauro, Esq.
                                              Emanuel Kataev, Esq.
                                              Kyle F. Monaghan, Esq.
                                              3000 Marcus Avenue, Suite 3W8
                                              Lake Success, NY 11042-1073
                                              (516) 328-8899 (telephone)
                                              (516) 328-0082 (facsimile)
                                              michael@mllaborlaw.com
                                              emanuel@mllaborlaw.com
                                              kyle@mllaborlaw.com

cc:     All counsel of record (via ECF).