UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JGIAP RH 160 LLC,

                                                  **Case No.: 1:21-cv-2849 (DG) (JRC)**

                  Plaintiff,

        -against-

CRI HOLDING CORP., TOURAJ
NAGHIEH, MORALI AND ASSOCIATES,
ANTHONY MORALI, JOSEPH MORALI,
MANDA INTERNATIONAL
CORPORATION, STRIKEFORCE
MECHANICAL CORPORATION, AND
ANGELO CORRAO,

                  Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
## WHICH RELIEF CAN BE GRANTED BY DEFENDANTS STRIKEFORCE
## <u>MECHANICAL, INC., MANDA INTERNATIONAL CORP., & ANGELO CORRAO</u>

**MILMAN LABUDA LAW GROUP PLLC**

Michael J. Mauro, Esq.
Emanuel Kataev, Esq.
Kyle F. Monaghan, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
michael@mllaborlaw.com
emanuel@mllaborlaw.com
kyle@mllaborlaw.com

**Date of Service: April 11, 2022**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

STANDARD OF REVIEW ..................................................................................... 2

    i.      Rule 12(b)(1) ............................................................................. 2

    ii.     Rule 12(b)(6). ............................................................................. 4

    iii.    Documents Other than the Complaint may be Considered ........................ 5

FACTS ......................................................................................................... 6

ARGUMENT ................................................................................................... 7

    I.      *COLORADO RIVER* ABSTENTION REQUIRES DISMISSAL OF THE COMPLAINT................................................................................ 7

    II.     PLAINTIFF LACKS STANDING TO BRING ITS CLAIMS................... 10

    III.    THE RICO CLAIMS ARE IRRETRIEVABLY DEFECTIVE ................ 12

        A. Plaintiff Fails to Properly Plead an Association-In-Fact "Enterprise" ... 14

        B. The Complaint Does Not Allege the Continuity Required to Establish a "Pattern" ......................................................................... 18

        C. The Complaint Does Not Allege an "Open-Ended" Pattern of Racketeering Activity ................................................................. 21

        D. Plaintiff Has Not Adequately Pled a RICO Conspiracy Violation Under 18 U.S.C. § 1962(d) ......................................................... 23

    IV.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION ......................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

Abbott Labs v. Adelphia Supply USA,
    2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. 2017)....................................................................16

Abramo v. Teal, Becker & Chiarmonte,
    713 F.Supp.2d 96 (N.D.N.Y. 2010)...................................................................................18

Albunio v. Int'l Safety Grp.,
    2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016) .......................................................22

Am. Fed'n of State v. Bristol-Myers Squibb Co.,
    948 F. Supp. 2d 338 (S.D.N.Y. 2012)..................................................................................1

Amsterdam Tobacco Inc. v. Philip Morris  Inc.,
    107 F. Supp. 2d 210 (S.D.N.Y. 2000)................................................................................17

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006)...........................................................................................................10

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................................................4

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)...................................................................................................5

Azrielli v. Cohen Law Offices,
    21 F.3d 512 (2d Cir. 1994).................................................................................................13

Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,
    820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011)..........................................................................3

Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,
    496 Fed. Appx. 131 (2d Cir. 2012)......................................................................................3

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).............................................................................................................4

Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc.,
    369 F.3d 212 (2d Cir. 2004).................................................................................................5

Boyle v. United States,
    556 U.S. 938 (2009)...........................................................................................................15

i

BWP Media USA, Inc. v. Hollywood Fan Sites, LLC,
 69 F. Supp. 3d 342 (S.D.N.Y. 2014)..................................................................... 23

Castellano v. Bd. of Trustees,
 937 F.2d 752, 758 (2d Cir. 1991)...................................................................... 25

Chambers v. Wright,
 No. 05-CIV.-9915 (WHP), 2007 WL 4462181 (S.D.N.Y. Dec. 19, 2007) ...................... 3

City of N.Y. v. Smokes-Spirifs.com, Inc.,
 541 F.3d 425 (2d Cir. 2008).............................................................................. 13

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
 187 F.3d 229 (2d Cir. 1999).............................................................................. 13

Colorado River Water Conservation Dist. v. U.S.,
 424 U.S. 800 (1976)........................................................................................ 3

Conte v. Newsday, Inc.,
 703 F. Supp. 2d 126 (E.D.N.Y. 2010) ............................................................... 15

Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC,
 2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. 2012).................................................... 16

Cosmos Forms Ltd. v. Guardian Life Ins. Co.,
 113 F.3d 308 (2d Cir. 1997).............................................................................. 18

Cruden v. Bank of New York,
 957 F.2d 961 (2nd Cir. 1992)............................................................................ 11

D'Addario v. D'Addario,
 901 F.3d 80 (2nd Cir. 2018).............................................................................. 11

De Falco v. Bernas,
 244 F.3d 286, 305 (2d Cir. 2001)...................................................................... 10

De Sole v. Knoedler Gallery, LLC,
 2013 U.S. Dist. LEXIS 142111 (S.D.N.Y. Sep. 30, 2013).................................... 13

Dittmer v. Cty. of Suffolk,
 146 F.3d 113 (2d Cir. 1998)............................................................................. 3

DLJ Mortg. Capital, Inc. v. Kontogiannis,
 726 F. Supp. 2d 225 (E.D.N.Y. 2010). ............................................................. 14

Doe v. Trump Corp.,
 385 F. Supp. 3d 265 (S.D.N.Y. 2019).............................................................. 10

Dulsky v. Worthy,
    2013 WL 4038604 (S.D.N.Y. July 30, 2013) ................................................................ 23

Econ. Opportunity Comm'n v. Cnty. of Nassau,
    47 F. Supp. 2d 353 (E.D.N.Y. 1999) ........................................................................ 22

Faiax v. Colgate Univ.,
    64 F. Supp. 3d 336 (N.D.N.Y. 2014). .......................................................................... 6

FD Prop. Holding, Inc. v. U.S. Traffic Corp.,
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) ...................................................................... 19

F.D.I.C. v. Four Star Holding Co.,
    178 F.3d 97 (2d Cir. 1999)..................................................................................... 3

Fernandez v. City of New York,
    2017 WL 2894144 (S.D.N.Y. July 7, 2017) ............................................................... 3

Figueroa Ruiz v. Alegria,
    896 F.2d 645 (1st Cir. 1990) .................................................................................. 14

First Capital  Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)................................................................................... 18

Flexborrow LLC v. TD Auto Fin. LLC,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ...................................................................... 19

Foster v. 2001 Real Estate,
    2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015).............................................................. 15

Frederick v Wells Fargo Home Mtge.,
    2015 US Dist. LEXIS 41328 (E.D.N.Y. 2015)............................................................. 16

GICC Capital  Corp. v. Tech. Fin. Group, Inc.,
    67 F.3d 463 (2d Cir. 1995).................................................................................... 18

Goldfine v. Sichenzia,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000)...................................................................... 24

Grace International v. Festa,
    2019 WL 1369000 (E.D.N.Y., Mar. 26, 2019) ........................................................... 18

Greenberg v. Blake,
    2010 WL 2400064 (E.D.N.Y. June 10, 2010) ............................................................ 15

Gross v. Waywell,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)...................................................................... 13

H.J. Inc., et al. v.  Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) ...................................................................................... 18

Halvorssen v. Simpson,
    2020 U.S. App. LEXIS 8512 (2d. Cir. 2020) ................................................. 20

Hoatson v. New York Archdiocese,
    2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)...................................................... 10

In re Comverse Tech., Inc.,
    No. 06-CIV.-1849 (NGG) (RER), 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) ............. 4

Int'l Bhd. of Teamsters v. Blitz,
    124 Fed. Appx. 41 (2d Cir. 2005)...................................................................... 22

Int'l Bhd. of Teamsters v. Carey,
    297 F.  Supp. 2d 706 (S.D.N.Y. 2004).............................................................. 22

J.S. ex rel. N.S. v. Attica Cent. Sch.,
    386 F.3d 107 (2d Cir. 2004)............................................................................... 3

Katzman v. Victoria's Secret Catalogue,
    167 F.R.D. 649 (S.D.N.Y. 1996) ...................................................................... 14

Katzman v. Victoria's Secret Catalogue,
    113 F.3d 1229 (2d Cir. 1997)............................................................................ 14

Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,
    342 U.S. 180 (1952)............................................................................................ 3

Landow v. Wachovia Secs., LLC,
    966 F. Supp.2d 106 (E.D.N.Y. 2013) ................................................................ 7

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,
    951 F. Supp. 1071 (S.D.N.Y. 1996)................................................................... 17

Lerner v. Fleet Bank, N.A.,
    318 F.3d 113 (2nd Cir. 2003)............................................................................ 10

Levy v. Southbrook Int'l Investments, Ltd.,
    263 F.3d 10, 14 (2d Cir. 2001), cert. denied, 535 U.S. 1054 (2002) ................................ 4

Magee v. Nassau Cnty. Med. Ctr.,
    27 F. Supp. 2d 154 (E.D.N.Y. 1998) ................................................................. 3

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000)................................................................................ 2

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d. Cir. 1993)............................................................................. 16

Miranda v. Ponce Fed. Bank,
    948 F.2d 41 (1st Cir. 1991).............................................................................. 14

Morrison v. Nat'l Australia Bank Ltd.,
    547 F.3d 167 (2d Cir. 2008)............................................................................... 2

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983)................................................................................................. 7

Nat'l Union Fire Ins. Co. v. Stucco Sys., LLC,
    289 F. Supp. 3d 457 (S.D.N.Y. 2018)............................................................... 6

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC,
    2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012)................................................ 12

Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,
    102 F.3d 660 (2d Cir. 1996)............................................................................... 5

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,
    673 F.3d 84 (2d Cir. 2012)................................................................................. 4

Palm Beach Strategic Income, LP v Salzman,
    2011 U.S. Dist. LEXIS 11566 (E.D.N.Y. Feb. 7, 2011)................................ 11

Pullman v. Alpha Media Publ'n., Inc.,
    2013 U.S. Dist. LEXIS 50697 (S.D.N.Y. Jan. 11, 2013).............................. 16

Rand v. Anaconda-Ericsson, Inc.,
    794 F.2d 843, 849 (2d Cir. 1986)..................................................................... 10

Ray Larsen Assocs., Inc. v. Nikko Am., Inc.,
    No. 89 CIV. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996)..................... 19

Redtail Leasing, Inc. v. Bellezza,
    1997 U.S. Dist. LEXIS 14821 (S.D.N.Y. Sep. 30, 1997).............................. 13

Reich v. Lopez,
    858 F.3d 55 (2nd Cir. 2017)............................................................................. 20

Reves v. Ernst & Young,
    507 U.S. 170 (1993)........................................................................................... 13

Rosenson v. Mordowitz,
    2012 U.S. Dist. LEXIS 120077 (S.D.N.Y. Aug. 23, 2012)............................. 1

Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.,
    466 F.3d 88 (2d Cir. 2006)................................................................................. 7

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997).............................................................................. 18

SEC v. Lee,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010)............................................................ 17

Shields v. Murdoch,
    No. 11-CIV.-4917 (PGG), 2012 WL 4097199 (S.D.N.Y. Sept. 18, 2012)........................ 4

Shipping Fin. Servs. Corp. v. Drakos,
    140 F.3d 129 (2d Cir. 1998)............................................................................ 3

Singh v. Parnes,
    199 F. Supp. 2d 152 (S.D.N.Y. 2002)........................................................... 15

Spool v. World Child Int'l Adoption Ag.,
    520 F.3d 178 (2d Cir. 2008)......................................................................... 13

Spoto v. Herkimer County Trust,
    2000 WL 533293 (N.D.N.Y, Apr. 27, 2000)................................................. 18

Superior Site Work, Inc. v NASDI, LLC,
    No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 384325 (E.D.N.Y. Jan. 23, 2017) ............... 10

TPTCC NY, Inc. v. Radiation Therapy Servs.,
    453 Fed. Appx. 105 (2d Cir. 2011)............................................................... 24

United States v. Aulicino,
    44 F.3d 1102 (2d Cir. 1995)......................................................................... 22

United States v. Burden,
    600 F.3d 204 (2nd Cir. 2010)....................................................................... 21

United States v. Turkette,
    452 U.S. 576 (U.S. 1981)............................................................................. 14

Wee v. Rome Hosp.,
    1996 WL 191970 (N.D.N.Y., Apr. 15, 1996)............................................... 19

Woodford v. Cmty. Action Agency of Greene County, Inc.,
    239 F.3d 517 (2d Cir. 2001)........................................................................... 7

York Hunter Const., Inc. v Avalon Properties, Inc.,
    104 F. Supp. 2d 211 (S.D.N.Y. 2000).......................................................... 10

Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,
    215 F.3d 247 (2d Cir. 2000)................................................................................... 2

Zenith Radio Corp. v. Hazeltine Research, Inc.,
    401 U.S. 321 (1971)........................................................................................ 11

**Statutes**

18 U.S.C. § 1962.......................................................................................................

28 U.S.C. § 1331.................................................................................................... 25

28 U.S.C. § 1367.................................................................................................... 24

Fed. R. Civ. P. 8.................................................................................................... 4

Fed. R. Civ. P. 9.................................................................................................... 5

Fed. R. Civ. P. 12........................................................................................... 2, 3, 4, 5

Defendants Strikeforce Mechanical, Inc. ("Strikeforce"), Manda International Corp. ("Manda") and Angelo Corrao ("Corrao") (collectively referred to as "Defendants") respectfully submit this memorandum in support of their motion, pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule"), to dismiss the first and second causes of action of Plaintiff's complaint, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), with prejudice without leave to amend, and to decline to exercise supplemental jurisdiction over the remaining causes of action set forth in the complaint.[1]

## PRELIMINARY STATEMENT

"[I]t is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." See Am. Fed'n of State v. Bristol-Myers Squibb Co., 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2012) (citing Rosenson v. Mordowitz, 2012 U.S. Dist. LEXIS 120077, at *12 (S.D.N.Y. Aug. 23, 2012)). "Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." See Am. Fed'n of State, 948 F. Supp. at 345 (quoting Rosenson, 2012 U.S. Dist. LEXIS 12007, at *13). Here, Plaintiff pleads that Strikeforce, Manda, and Corrao conspired like synchronized swimmers with the remaining defendants to ensure work on a project never ends so that they could each indefinitely bill Plaintiff for services performed; this is not a RICO claim.

---

[1] Consistent with ¶ III(A)(4) of this Court's Individual Practice Rules, which requires a party responding to a pre-motion letter in anticipation of a motion to dismiss to state whether it will seek leave to amend in light of one or more of the alleged pleading defects or, instead, whether it prefers to proceed to briefing on the contemplated motion, Plaintiff rejected the Court's generous opportunity to file an Amended Complaint to cure the deficiencies that have twice been raised by some or all of the defendants in this case, as set forth in their respective letters to the Court requesting permission to move to dismiss the Complaint in lieu of answering. See ECF Docket Entries 17, 24-26, 27-29, 33, 42-50 (stating within Docket Entry 50 that Plaintiff "does not believe there is any need to amend its Complaint").

For a multitude of reasons, these dubious run-of-the-mill breach of contract and fraud claims – which are brought in an effort to hamper Manda and Strikeforce for collecting the value of the materials it provided and the services it performed at the premises – can never be molded to fit the RICO form.  For one, the existence of parallel state-court litigation renders this case dismissed under the <u>Colorado River</u> abstention doctrine.  For another, Plaintiff lacks standing to sue because another party in another action has laid claim to the premises at issue in this case, and the Plaintiff was formed well after Strikeforce, Manda, and Corrao were involved with performing work on the premises.  Moreover, Plaintiff's RICO claims are defective and fail to state a claim upon which relief can be granted.  Finally, this Court should not exercise its discretion to have supplemental jurisdiction over the remaining state law claims because no federal question exists and exile this case back to state court where it belongs.  Accordingly, this Court must dismiss the RICO claims and decline to exercise supplemental direction over the remaining state law claims.

## STANDARD OF REVIEW

i.    <u>Rule 12(b)(1)</u>

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. <u>See</u> Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. <u>See</u> <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008) (<u>quoting</u> <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings...." <u>See</u> <u>Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).

When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (citing Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first,[2] because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." See Chambers v. Wright, No. 05-CIV.-9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

Federal courts may abstain from exercising jurisdiction over an action for which there is a parallel state court proceeding based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." See Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976) ("Colorado River") (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)).

A district court may *sua sponte* challenge subject matter jurisdiction, including through abstention principles. See F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 100 n.2 (2d Cir. 1999) (finding that a district court or appellate court could *sua sponte* address subject matter jurisdiction and applying Colorado River abstention principles).

"An analysis of whether a court should abstain under Colorado River begins with a determination of whether the concurrent federal and state proceedings are 'parallel' in nature." See Fernandez v. City of New York, 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)).

---

[2] See Baldessarre v. Monroe–Woodbury Cent. Sch. Dist., 820 F. Supp. 490, 499 (S.D.N.Y. 2011), aff'd, 496 Fed. Appx. 131 (2d Cir. 2012).

Federal and state proceedings are "parallel" for abstention purposes when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) ("Niagara"). Crucially, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." See Shields v. Murdoch, No. 11-CIV.-4917 (PGG), 2012 WL 4097199, at *5 (S.D.N.Y. Sept. 18, 2012) (quoting In re Comverse Tech., Inc., 06-CIV.-1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (internal quotations marks omitted).

ii.    Rule 12(b)(6)

To survive a motion to dismiss under Rule Civil Procedure 12(b)(6), Plaintiff must allege in its complaint facts that, if accepted as true, "state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To meet this plausibility standard, Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged. Id. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." See Iqbal, 556 U.S. at 678.

"[O]n a motion to dismiss[,] a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs favor." See Levy v. Southbrook Int'l Investments, Ltd., 263 F.3d 10, 14 (2d Cir. 2001), cert. denied, 535 U.S. 1054 (2002) (citations omitted). However, the Court need not accept legal conclusions as true. See Iqbal, 556 U.S. at 678.

4

And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See Iqbal, 556 U.S.at 679.  Further, where – as here – Plaintiff bases claims on fraud, they are also subject to the heightened pleading requirements of Rule 9(b). See Fed. R. Civ. P. 9(b).  Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Id.  To satisfy this requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

iii.    Documents Other than the Complaint may be Considered

While a district court deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim ordinarily "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference,"[3] "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." See Makarova, 201 F.3d at 113 (2d Cir. 2000).

Additionally, under either standard the court may take judicial notice of documents in the public record, including state court filings. See Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

---

[3] See Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996).

## FACTS

Plaintiff is a limited liability company organized under the laws of New York. Lender's principal place of business is New York, New York. See Declaration of Emanuel Kataev ("Kataev Decl.") ¶ 3, Ex. A at ¶ 18.  It was formed on February 24, 2021.  See Kataev Decl. ¶ 4, Ex. B.[4]

Red Hook 160 LLC is the owner and developer of a luxury condominium project (the "Project") located at 160 Imlay Street, Brooklyn, New York (the "Property"). Id. at ¶1. Plaintiff, through a series of purported assignments from Red Hook 160 LLC, commenced this case against the Defendants. Id. at ¶¶ 30-33.

Strikeforce is alleged to have performed work at the Project starting in no earlier than May 2019. Id. at ¶ 45. Manda is alleged to have been retained to replace the Construction Manager at the Project in December 2019. Id. at ¶¶ 44-48. An "AIA" contract was entered into between Red Hook 160 LLC and Manda/Strikeforce. Id. at ¶¶ 48-58.[5]

Manda and Strikeforce are alleged to be "willing co-conspirators" in Defendant CRI Holdings scheme to extend the duration of the Project from January 31, 2020 through June 3, 2020, a period of six (6) months. Id. at ¶ 87.  Manda filed a mechanic's lien in August 2020 and subsequently amended the Lien in November 2020. Id.  ¶ 101-102. In August 2020, Strikeforce similarly filed a mechanic's lien. Id. at ¶ 109.

---

[4] This Court may take judicial notice of public records.  See Blue Tree Hotels Inv. (Can.), Ltd., 369 F.3d at 217.

[5] The contract has a mandatory arbitration provision.  See Kataev Decl., ¶ 5, Ex. C. The Court may entertain the contract on this motion since it was referenced at length in the Complaint. See Faiax v. Colgate Univ., 64 F. Supp. 3d 336 (N.D.N.Y. 2014).  Since all agreements (including ancillary) were assigned according to Plaintiff's complaint, Plaintiff is obligated to arbitrate its frivolous claims.  See Nat'l Union Fire Ins. Co. v. Stucco Sys., LLC, 289 F. Supp. 3d 457, 467 (S.D.N.Y. 2018) (successor -in-interest to signatory of arbitration agreement could be compelled to arbitrate claims). The mandatory arbitration thus separately requires dismissal of the instant Complaint as against Manda, Strikeforce, and Corrao.

On June 8, 2021, Red Hook 160 LLC filed a petition against Manda and Strikeforce related to the Property.[6]  See Kataev Decl. ¶ 6, Ex. D. (hereinafter the "State Court Petition") There, Red Hook 160 LLC claims to be the owner of the Property.  Id..  Red Hook 160 LLC was formed on March 13, 2012.  See Kataev Decl. ¶ 7, Ex. E.

## ARGUMENT

### I. *COLARADO RIVER* ABSTENTION REQUIRES DISMISSAL OF THE COMPLAINT

Under Colorado River, *infra*, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources."  See Niagara, 673 F.3d at 100 (quoting Colorado River, 424 U.S. at 817.  In evaluating whether Colorado River abstention is appropriate, federal district courts are to consider six (6) factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). These six factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction, (2) whether the federal forum is less inconvenient than the other for the parties, (3) whether staying or dismissing the federal action will avoid piecemeal litigation, (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other, (5) whether federal law provides the rule of decision, and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

See Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted). No one factor is necessarily determinative. See Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006) (quoting Colorado River, 424 U.S. at 818-19).

---

[6] The Court may "take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.'" See Landow v. Wachovia Secs., LLC, 966 F. Supp.2d 106, 119 (E.D.N.Y. 2013).

There are two entities in different forums claiming fraud over the same set of invoices. See Kataev Decl. Exs. A & D. In the case before this Court, the entity suing has alleged that it has taken over all rights of the property owner, as set forth below. Plaintiff alleges as series of contractual "assignments" relating to a loan to RH 160:

- On or around December 27, 2019, Churchill 160 Imlay Lender LLC (the "Original Lender"), a New York Limited Liability Company, provided a loan in the original principal amount of $59,000,000 (the "Mortgage Loan") to RH 160 pursuant to that certain Loan and Security Agreement, dated as of December 27, 2019 (the "Mortgage Loan Agreement").
- As collateral security for the Mortgage Loan, on or around December 27, 2019, the Original Lender and RH 160 entered into that certain Assignment Of Agreements, Licenses, Permits And Contracts (the "Assignment Agreement").
- Pursuant to the Assignment Agreement, RH 160 did assign to Original Lender, and all of Original Lender's successors and assigns, "all plans and specifications for any work performed at the Premises *and all other agreements* (including, but not limited to, those with architects, contractors, construction managers, suppliers and the like), plans and specifications and records relating to the construction, development, use, ownership, operation and/or maintenance of" the Project.
- On or around December 27, 2019, the Original Lender assigned the Mortgage Loan, together with all Original Lender's right, title, and interest in and to the Mortgage Loan Agreement *and all ancillary agreements*, including the Assignment Agreement, to MAM 160 Imlay Lender LLC ("MAM").
- On or around March 10, 2021, MAM assigned the Mortgage Loan, together with all MAM's right, title, and interest in and to the Mortgage Loan Agreement *and all ancillary agreements*, including the Assignment Agreement, to Lender.

See Kataev Decl. Ex. B at ¶¶ 29-33 (emphasis added).  Plaintiff's complaint essentially argues that invoices RH 160 received were the product of a grand conspiracy of fraud amongst all defendants. See Kataev Decl. ¶ 3, Ex. A at ¶¶ 86-108.  Even though Plaintiff did not exist at the time of the last issued invoice and the filing of the liens, it contends that it has been injured by the alleged conspiracy.   Contrary to the Plaintiff's position in the instant matter, in the State Court Petition, the plaintiff alleges that Red Hook 160 Imlay (RH 160) is the owner of the property at issue in this case.  See Kataev Decl. ¶6, Ex D. RH 160, the "owner" is essentially disputing the same invoice amounts in state court.

8

To wit, RH 160 commenced an action in New York State Supreme Court seeking an itemization of the lien amounts cited by Plaintiff here. See Kataev Decl. ¶6, Ex D.

Virtually each of the Colorado River abstention factors weigh in favor of abstention. First, the state court has jurisdiction over the *res* — the property that is subject of the liens at issue in this case. Second, staying or dismissing the federal litigation would avoid piecemeal litigation. RH 160 argues that the lien amounts are not properly substantiated as required the New York's Lien Law and therefore the lien should be discharged. Meanwhile, the Plaintiff here – an entity that purportedly has been assigned various rights from RH 160 as outlined immediately above[7] – makes the same fatuous claims of exaggerated amounts, except covered with the pariah RICO cloak.

Based on the foregoing, the instant litigation currently exists in two legal fora, and this Court will be deciding essentially the same issue that Justice Carl J. Landicino will be deciding in the Supreme Court of the State of New York, Kings County; namely, whether Manda and Strikeforce properly billed Plaintiff for its materials and labor.

Third, the issue of whether state or federal law provides the rule of decision, similarly weighs in favor of abstention. Plaintiff's allegations, once distilled, are that it was overbilled for work performed, and the state court is best suited to resolve what is nothing more than a billing dispute. The resources of this federal court should not be wasted on this routine state court matter.

Fourth, the state court petition is fully submitted and a decision is imminent.

Fifth, this case is in its initial stage with pre-answer motions to dismiss being submitted by all defendants.

---

[7] As addressed earlier, the parties need not to be identical.  See Niagara and Shields, *supra*, at 4. Nevertheless, based upon Plaintiff's pleading that it took an assignment of "all agreements" and all "ancillary agreements" appears to include all contracts for work performed, Plaintiff is essentially the same party because an assignee stands in the shoes of the assignor. See Nat'l Union Fire Ins. Co., 289 F. Supp. 3d at 467.

As such, the Court's abstention here would conserve judicial resources and either dismiss this case or, at a minimum, stay all proceedings pending a decision on the petition. Courts have routinely ruled in this fashion in similar circumstances. See York Hunter Const., Inc. v Avalon Properties, Inc., 104 F. Supp. 2d 211, 217 (S.D.N.Y. 2000) (dismissing case without prejudice for all parties to assert their claims in state court); see also Superior Site Work, Inc. v NASDI, LLC, No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 384325, at *7 (E.D.N.Y. Jan. 23, 2017) (staying federal case pending outcome of two state court cases). This Court should thus dismiss this case.

## II. PLAINTIFF LACKS STANDING TO BRING ITS CLAIMS

To demonstrate standing under 18 U.S.C. § 1964(c), a plaintiff must plead, at a minimum, "(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2nd Cir. 2003). The requisite causation is proximate causation between the RICO claim and the alleged injury, the "direct relation" requirement. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 460 (2006); Doe v. Trump Corp., 385 F. Supp. 3d 265, 276 (S.D.N.Y. 2019); see also De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) ("To state a claim under 18 USC § 1961 *et seq.*, PBSI must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962").

Here, Plaintiff does not assert any direct injury from the alleged RICO predicate acts, tortious acts, or other alleged breaches or wrongdoing. Indeed, it acknowledges it was formed after the last alleged fraudulent act. Without more, the claim fails. See Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986) (no standing without direct injury); see also Hoatson v. New York Archdiocese, 2007 WL 431098, at *6 (S.D.N.Y. Feb. 8, 2007) (no standing without direct injury of the sort "RICO intended to prevent").

Moreover, Plaintiff acknowledges that it was not a party to any agreement with Strikeforce or Manda. In fact, again, Plaintiff alleges it took an assignment of purported documents between some other lender that allegedly had an agreement with the owner of the property located at 160 Imlay Street, without addressing whether Manda's and Strikeforce's respective agreements even address whether successors and assigns are permitted.  Plaintiff is thus several times removed from any contract that may have existed between the owner of the property and Manda. Notably, Plaintiff did not allege that there was a contract between itself and Strikeforce nor did it allege that Strikeforce itself executed an agreement with Red Hook 160 Imlay LLC. See Kataev Decl., ¶ 3, Ex. A. As such, Plaintiff's claim fails. See Palm Beach Strategic Income, LP v Salzman, 2011 U.S. Dist. LEXIS 11566 (E.D.N.Y. Feb. 7, 2011) (dismissing RICO claim where plaintiff not a party).

Additionally, given the choice of wording regarding the assignment that Plaintiff pled,[8]  as emphasized *supra*, Defendants contend Plaintiff does not have standing to bring this action where the "owner" of the property is currently in state court attacking the legitimacy of the very same invoices. In other words, there are two entities in two separate forums claiming the same injury. This case must therefore be dismissed for Plaintiff's lack of standing.  Moreover, "until [an injury to business or property] occurs, there is no right to sue for damages under § 1964(c), and until there is a right to sue under § 1964(c), a civil RICO action cannot be held to have accrued." See Cruden v. Bank of New York, 957 F.2d 961, 977 (2nd Cir. 1992); see also D'Addario v. D'Addario, 901 F.3d 80, 93 (2nd Cir. 2018). "The type of injury required under § 1964(c) cannot be said to have occurred where the damages arising from defendant's conduct are speculative or their amount and nature unprovable." See Cruden, 957 F.2d at 977 (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 339 (1971)).

---

[8] See Kataev Decl., ¶ 3, Ex. A at ¶¶ 30-31.

Here, aside from the fact Plaintiff didn't exist at the time of the alleged injury, neither Plaintiff nor RH 160 has paid Defendants any monies under the liens. See Kataev Decl. ¶¶ 4,7, Exs. B, E.  As such, they cannot claim to have been injured.  Additionally, "'civil RICO has resulted in a flood of what are and should be state court cases that are being reframed and brought in federal court as RICO actions because of the carrot of treble recovery and the availability of a federal forum.' As a result, courts scrutinize RICO claims, particularly those based solely on predicate acts of wire fraud*.*" See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC, 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012) (citations omitted).  This Court should similarly scrutinize the claims here, especially in light of Plaintiff's failures to answer the most routine of questions before the Court at the pre-motion conference on September 3, 2021. See Kataev Decl. ¶ 8, Ex. F at Tr. 23:2-9.[9]

Here, the first act alleged in the Complaint that could be construed as the first purported predicate act occurred on April 12, 2019 when Manda first entered into a contract with RH 160, and the last alleged predicate act occurred in July 2020. See Kataev Decl. ¶ 3, Ex. A at ¶¶36, 101. Meanwhile, this Complaint was filed on May 5, 2021. Id. Therefore, the alleged predicate acts occurred under a span of two-years and are not actionable pursuant to RICO.

### III. THE RICO CLAIMS ARE IRRETRIEVABLY DEFECTIVE

Irrespective of the foregoing arguments, Plaintiff's claims under RICO fall flat on their face because they completely fail to state a claim upon which relief can be granted.  The RICO claims here are so poorly pled, they fail for four (4) independent reasons.

---

[9] "THE COURT: Could you identify for me the first predicate act and the last predicate act that you're alleging and give me the dates? MR. WILSON: So I can follow up with the specific dates. I don't have them in front of me right now. But the predicate acts were the construction alleged to be necessary and the requisition forms that were submitted for payment. That's [sic] simply did not occur."

To state a claim for a violation of RICO pursuant to 18 U.S.C. § 1962(c), Plaintiff "must demonstrate, as to each defendant, that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." See Gross v. Waywell, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009); Spool v. World Child Int'l Adoption Ag., 520 F.3d 178, 183 (2d Cir. 2008).

Significantly, these "requirements ... *must be established as to each individual defendant*." See De Falco, 244 F.3d at 306. (emphasis added). "[A] plaintiff must [also] show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994)). Furthermore, a RICO plaintiff must allege that the defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See 18 U.S.C. § 1962(c); see also Reves v. Ernst & Young, 507 U.S. 170, 177-79 (1993). In Reves, the Supreme Court explained that the defendant must have had "some part in directing [the enterprise's] affairs." See Reves, 507 U.S. at 179 ("[O]ne is not liable ... unless one has participated in the operation or management of the enterprise itself."). "A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." See Redtail Leasing, Inc. v. Bellezza, 1997 U.S. Dist. LEXIS 14821, at *14 (S.D.N.Y. Sep. 30, 1997). Rather, he must "exert ... control" over the enterprise. See City of N.Y. v. Smokes-Spirifs.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008); see also De Sole v. Knoedler Gallery, LLC, 2013 U.S. Dist. LEXIS 142111, at *50-51 (S.D.N.Y. Sep. 30, 2013) ("one is liable under RICO only if he 'participated in the operation or management of the enterprise itself.'") (quoting Azrielli,, 21 F.3d at 521).

13

It must be noted that courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), aff'd, 113 F.3d 1229 (2d Cir. 1997) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)). "Because the 'mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" Id. (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)); see also DLJ Mortg. Capital, Inc. v. Kontogiannis, 726 F. Supp. 2d 225 (E.D.N.Y. 2010).

Indeed, although civil RICO may be a "potent weapon," plaintiffs wielding RICO almost always miss the mark. See Gross, 628 F. Supp. 2d at 479-83 (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007 and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

Accordingly, courts have expressed skepticism toward civil RICO claims. See, e.g., DLJ Mortg. Capital, 726 F. Supp. 2d at 236 ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations.").

### A. Plaintiff Fails to Properly Plead an Association-In-Fact "Enterprise"

To adequately state a civil RICO claim, a plaintiff must plead sufficient facts to establish that the defendants formed an "enterprise" on whose behalf they acted. The enterprise is the essence of a RICO claim in that the defendants must have been acting on behalf of the enterprise and not merely for their own benefit.

Plaintiff seeks to establish the "enterprise" component by pleading an "association-in-fact enterprise."

An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." See Boyle v. United States, 556 U.S. 938, 945 (U.S. 2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (U.S. 1981)). At a minimum, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 556 U.S. at 956 (internal quotations omitted).

The Second Circuit looks to the "'hierarchy, organization, and activities' of the association to determine 'whether its members functioned as a unit.'" See Foster v. 2001 Real Estate, 2015 WL 7587360, *4 (S.D.N.Y. Nov. 24, 2015) (quoting Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 133 34 (E.D.N.Y. 2010)). "Although the Supreme Court's holding in Boyle establishes that a RICO enterprise need not have a formal hierarchy, a Plaintiff must still allege some structural features; otherwise, "any two thieves in cahoots would constitute an association–in–fact." See Foster, 2015 WL 7587360 at *4 (quoting Greenberg v. Blake, 2010 WL 2400064, *7 (E.D.N.Y. June 10, 2010)). Said otherwise, the complaint must "addresses the relationships among defendants in a manner that distinguishes between the "enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering." Singh v. Parnes, 199 F. Supp. 2d 152, 162 (S.D.N.Y. 2002).

The Complaint is bereft of allegations sufficient to establish "association-in-fact enterprise". Plaintiff has merely alleged that three individuals and related companies they own essentially conspired to pass along invoices for work that was allegedly not performed. The Complaint does not allege that all individual defendants and corporate defendants had any other association other than the Property.

15

There are no allegations of hierarchy; no allegations that the individual defendants and corporate defendants are an "ongoing organization, formal or informal".  The Complaint is silent as to Defendants (Strikeforce, Manda, Corrao) about engaging in any other similar conduct with any of the other defendants anywhere. There are no allegations that Defendants "function as a continuing unit" with the other defendants. Plaintiff at best provides nothing more than conclusory allegations in a futile effort to avoid immediate dismissal under FRCP 12(b)(6). Such conclusory allegations of association in fact enterprise are insufficient to avoid dismissal. See Abbott Labs v. Adelphia Supply USA, 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. 2017) (finding that plaintiff did not allege facts sufficient to allege an association-in-fact because plaintiff provided nonspecific factual allegations); Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, 2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. 2012).

Moreover, Plaintiff does not allege that the Defendants' alleged criminal collaboration existed for any other purpose other than just to pass along alleged phony invoices.  This is not an organized crime case where the criminal enterprise exists (as an association or otherwise) and operates in addition to the main businesses providing a service.

Furthermore, Plaintiff nowhere even mentions how or whether each of the defendants communicated with each other, nor how each of the sub-associations stands apart from their purported racketeering activities." Accordingly, Plaintiff has failed to allege that Defendants "associated together for a common purpose of engaging in a course of conduct" and, therefore, have not satisfied the "enterprise" element of a RICO claim. See Frederick v Wells Fargo Home Mtge., 2015 US Dist. LEXIS 41328, *29 (E.D.N.Y. 2015).

In addition, Plaintiff impermissibly lumps the defendants together in its allegations and does not differentiate which defendant committed which act(s).

When allegations of fraud involve multiple defendants, plaintiff must "allege that [each defendant] personally knew of, or participated in, the fraud." See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d. Cir. 1993); Pullman v. Alpha Media Publ'n., Inc., 2013 U.S. Dist. LEXIS 50697 (S.D.N.Y. Jan. 11, 2013) (dismissing complaint under Rule 9(b) because plaintiff "[did] not specifically connect [a defendant] to the fraud," but instead made specific allegations with respect to certain defendants and otherwise "refer[red] to 'defendants' in general"); SEC v. Lee, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (when multiple defendants are involved, a plaintiff "must plead circumstances providing a factual basis for scienter ... for each defendant; guilt by association is impermissible").

Finally, the existence of an enterprise alone is insufficient to successfully plead a RICO claim. A plaintiff must also plead that each defendant "conducted or participated, directly or indirectly, in the conduct of" the enterprise's affairs. See 18 U.S.C. § 1962(c). The Supreme Court has explained that for a RICO claim to be properly pled, the defendants must have participated "in the operation or management of the enterprise." See Reves, 507 U.S. at 185. (internal quotations omitted). In the Second Circuit, a plaintiff must plead that *each* defendant played "some part in directing the enterprise's affairs." See Conte, 703 F. Supp. 2d at 135 (emphasis added) (internal quotations omitted).

"As interpreted by courts in this district and others, the 'operation and management' test set forth in Reves ... is a very difficult test to satisfy." See Amsterdam Tobacco Inc. v. Philip Morris  Inc., 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) (citing LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996). "Liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." See Reves, 507 U.S. at 185.

17

Here, Plaintiff provided nothing more than conclusory utterances in a futile effort to sufficiently plead that Defendants conducted or participated in the affairs of the enterprise. Plaintiff just pleads facts about what Defendants did with respect to their own affairs. Nothing in the Complaint explains how this alleged enterprise is anything other than an arbitrary, artificially created, reverse-engineered allegations specifically to satisfy Section 1962(a)'s requirement. Such tittup in response to Manda's and Strikeforce's efforts to collect on the services it rendered on the Project must be seen for what it is.  Consequently, the Complaint must be dismissed.

### B. The Complaint Does Not Allege the Continuity Required to Establish a "Pattern."

Predicate acts are 'related' for RICO purposes, when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). Relatedness is indicated by "temporal proximity of the [underlying] acts, by common goal, methodology, and their repetition." See Cosmos Forms Ltd. v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997).

Continuity, on the other hand, requires something more. And, in fact, the continuity element is where many would-be claims fall short of RICO's strict requirements and find dismissal. See, e.g., Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000); Grace International v. Festa, 2019 WL 1369000, at *5 (E.D.N.Y., Mar. 26, 2019).

"Continuity" may be established through either "a closed period of repeated conduct, or [ ] past conduct that by its nature projects  into the future with a threat of repetition." See H.J. Inc., et al. v.  Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989) (citation omitted); see also First Capital  Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (RICO plaintiffs

"must  allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled  with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time) (quoting GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995)).

"Closed-ended continuity" means that the underlying racketeering acts happened over a long time—it is rather strictly about duration. See First Capital Asset Mgmt, 385 F.3d at 181 ("A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time."). "[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement." See Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).

In fact, "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." See Abramo, 713 F. Supp. 2d at 110 (emphasis added) (citing First Capital Asset Mgmt., 385 F.3d at 181); see also DeFalco, 244 F.3d at 321 (collecting cases). This duration "is measured by the RICO predicate acts the defendants commit"—that is, the span of time in which the actual acts of mail fraud, wire fraud, or other RICO crimes occurred. See Abramo, 713 F. Supp. 2d at 110-11. In accordance with Second Circuit precedent, the courts in this Circuit repeatedly dismiss closed-ended pattern cases when the defendant fails to allege racketeering acts spanning at least two years. See Id. at 110; see also Wee, 1996 WL 191970, at *5; FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002); Flexborrow LLC v. TD Auto Fin. LLC, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017); Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809, 1996 WL 442799, at *8 (S.D.N.Y. Aug. 6, 1996).

Here, granting the Plaintiff the most liberal interpretation of its Complaint, the Plaintiff has alleged that the purported scheme was carried out over a period of at most fifteen (15) months and, therefore, close-ended continuity cannot be pled. *See, e.g.,* See Kataev Decl. ¶ 3, Ex. A at ¶ 36, 101; see also See Kataev Decl. ¶ 8, Ex. F at Tr. 24:23-25:19**.** Because Plaintiff has failed to allege, as required, two or more predicate acts constituting a pattern of racketeering activity, the RICO claims must be dismissed.[10] See Schlaifer, 119 F.3d at 97 (to establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity").

The Complaint's indisputable failure to allege acts more than 11 months is not the only reason the "pattern" element is absent thereby requiring dismissal. "To establish a pattern, a plaintiff must identify at least two predicate acts and show that (1) the acts are related both to each other (horizontal relatedness) and to the enterprise (vertical relatedness) and (2) the conduct continued over a substantial period of time." See Halvorssen v. Simpson, 2020 U.S. App. LEXIS 8512, *6 (2d. Cir. 2020). Plaintiff has failed to show even two predicate acts at least spanning 2 years, thus mandating dismissal. Id. at *6 ("The requirement that the plaintiff establish a pattern of racketeering activity is intended to prevent the application of RICO to 'isolated or sporadic' criminal acts").

Nevertheless, Plaintiff has also failed to plead horizontal relatedness. "Horizontal relatedness requires that the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. (citing Reich v. Lopez, 858 F.3d 55, 61 (2nd Cir. 2017) (quoting H.J., 492 U.S. at 240).

---

[10] Again, Plaintiff declined the Court's opportunity to amend its complaint to cure this deficiency.

"Where the enterprise at issue is primarily a legitimate business, horizontal relatedness cannot be stablished 'simply by linking each act to the enterprise,' but rather there must be a relationship 'between the predicate crimes themselves.'" Id. (citing Reich, 858 F.3d at 61)). Where "[t]he only horizontal link between the predicate crimes is the overlap of participants" and "where the enterprise in question is not primarily in the business of racketeering, that is insufficient." See Reich, 858 F.3d at 62.

Here, there are no allegations that Strikeforce or Manda act for any other purpose than as legitimate businesses – no history of any other alleged criminal conduct or simultaneous to the alleged conspiracy here. Plaintiff has alleged nothing more than overlap in participants engaging in alleged wire fraud. Such pleadings are insufficient for adequately pleading "horizontal relatedness" and the Complaint must be dismissed.

As to vertical relatedness, the plaintiff must plausibly allege 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.'" Id. (citing United States v. Burden, 600 F.3d 204, 216 (2nd Cir. 2010)).

Plaintiff makes no allegations concerning vertical relatedness. The boiler plate allegation that "Defendants participated in the operation and management of the Enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described below.". See Kataev Decl. ¶ 3, Ex. A at ¶ 143. Said allegation is conclusory and insufficient to avoid dismissal. Id. Plaintiff does not provide further non-conclusory allegations despite averring more would follow "as described below".

Moreover, the sole allegation against Corrao is that he "is an individual and was instrumental in the furtherance of the Enterprise." Id. at ¶ 131.

Plaintiff does not allege that Corrao "was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." In sum, Plaintiff does not plead vertical integration and the Complaint must be dismissed.

**C.  The Complaint Does Not Allege an "Open-Ended" Pattern of Racketeering Activity**

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." See Cofacredit, 187 F.3d at 242. In other words, courts do not require a plaintiff to establish that the criminal conduct occurred for a long time in the past (two years or more) if the defendant threatened certain RICO criminal conduct in the future, as of the time that the plaintiff sued.

The Second Circuit has clarified that this theory only applies to "inherently unlawful" criminal activities in pursuit of "inherently unlawful" goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering. See United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Albunio v. Int'l Safety Grp., 2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016) (emphasis added); see also Spoto, 2000 WL 533293, at *5.

"Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity." See Grace Int'l, 2019 WL 1369000, at *8 (citing Aulicino, 44 F.3d at 1111). That is because using the mails or wires is not *per se* criminal—whether a particular piece of mail or wire communication is deceptive or not depends on factual details surrounding the communication, which lend themselves to resolution within an ordinary civil remedy (such as a common law fraud claim). In contrast, murder, bribery and drug trafficking, etc., are generally illegal *per se*.

Open-ended continuity is reserved for those cases in which the defendant's threat of future conduct rises to that grave level of offense rather than ordinary fraud. See Int'l Bhd. of Teamsters v. Carey, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("[F]raud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context." (citation omitted)), aff'd sub nom. Int'l Bhd. of Teamsters v. Blitz, 124 Fed. Appx. 41 (2d Cir. 2005); Econ. Opportunity Comm'n v. Cnty. of Nassau, 47 F. Supp. 2d 353, 366-67 (E.D.N.Y. 1999) (mail fraud, wire fraud and Hobbs Act predicates are not inherently unlawful for purposes of RICO continuity).

In this case, Plaintiff relies entirely on alleged mail and wire fraud predicates. There are no allegations that Defendants engaged in or threatened "inherently unlawful" crimes such as murder, drug trafficking, money laundering, or anything of the sort. Accordingly, the plaintiffs' claims are ineligible for an open-ended continuity theory, and the pleading fails to allege a "pattern" of racketeering activity.[11]

For the foregoing reasons, Plaintiff has failed adequately to allege a pattern of racketeering activity under RICO subsection 1962(c).

Accordingly, the complaint must be dismissed.

## D. Plaintiff Has Not Adequately Pled a RICO Conspiracy Violation Under 18 U.S.C. § 1962(d)

If a "complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails." See BWP Media USA, Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014).

Since Plaintiff fails to properly plead a civil RICO violation, its claim alleging a RICO conspiracy also must fail as a matter of law.

---

[11] Plaintiff repeatedly declined the opportunity to amend its complaint to cure this deficiency.

23

Furthermore, assuming *arguendo* that Plaintiff had properly pled a RICO violation, Plaintiff's conspiracy claim still fails because it fails to allege specific facts showing that each of the defendants, and specifically Defendants on this motion, entered into an agreement to commit any of the predicate acts. See Dulsky v. Worthy, 2013 WL 4038604, *5 (S.D.N.Y. July 30, 2013) ("The core of a RICO conspiracy is an agreement to commit predicate acts, and a RICO civil conspiracy complaint must specifically allege such an agreement.") (internal quotations omitted.) "[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." See FD Prop. Holding, Inc, 206 F. Supp. 2d at 373.

Plaintiff does not allege any facts demonstrating that Defendants actually entered into any specific conspiracy agreement to do anything in particular with any other defendant. Plaintiff alleges no details about when the purported agreement amongst the various defendants, all of whom began work on the Project at separate times, was entered into, nor about how the defendants intended to split any profits, for example. Moreover, there are no allegations in the Complaint demonstrating that Corrao was aware of the scope of the purported enterprise. See Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 407 (S.D.N.Y. 2000) (holding that the plaintiff failed to properly plead a violation under section 1962(d) where the complaint was "devoid of any factual allegation whatsoever to indicate that any of the moving defendants were aware of the alleged scope of the purported enterprise.") This failure is fatal to Plaintiff's RICO conspiracy claim.

## IV. THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. The Court has discretion to hear such claims pursuant to 28 U.S.C. § 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

See 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), however, the exercise of supplemental jurisdiction over a party's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." See TPTCC NY, Inc. v. Radiation Therapy Servs., 453 Fed. Appx. 105, 106 (2d Cir. 2011).   The Second Circuit has repeatedly counseled against exercising supplemental jurisdiction in this circumstance: "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" See First Capital Asset Mgmt., 385 F.3d at 183 (quoting Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir. 1991)).   Accordingly, because this Court should dismiss all of Plaintiff's claims that are based on a federal question under 28 U.S.C. § 1331, and because there is no other basis for jurisdiction over this case, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.

Dated: Lake Success, New York
      April 11, 2022

**MILMAN LABUDA LAW GROUP PLLC**
_____/s/_____
Michael J. Mauro, Esq.
Emanuel Kataev, Esq.
Kyle F. Monaghan, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
michael@mllaborlaw.com
emanuel@mllaborlaw.com
kyle@mllaborlaw.com

*Attorneys for Defendants*
*Strikeforce Mechanical,*
*Manda International Corp.*
*and Angelo Corrao*

25