UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JGIAP RH 160 LLC,

Plaintiff,

-against-

CRI HOLDING CORP., TOURAJ NAGHIEH, MORALI AND ASSOCIATES, ANTHONY MORALI, JOSEPH MORALI, MANDA INTERNATIONAL CORPORATION, STRIKEFORCE MECHANICAL CORPORATION, AND ANGELO CORRAO,

Defendant.
-----------------------------------------------------------------------X

Civil Action No.: 1:21-CV-02489-DG-JRC

**DECLARATION OF JOE MORALI**

STATE OF NEW YORK )
) :SS
COUNTY OF NEW YORK )

JOE A. MORALI, being duly sworn and deposes and says:

1. I am a named defendant in this lawsuit. I am also the Managing Director of Morali Architects, PLLC i/s/h/a Morali and Associates ("MA"), which is also a named defendant in this lawsuit. Anthony Morali is the founder and an sole member of MA. I am fully familiar with the facts set forth in this affidavit.

2. I submit this Affidavit in support of the motion by Defendants MA, Anthony Morali, and me (collectively, the "Morali Defendants") seeking an order:

a. pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6), dismissing the Complaint of Plaintiff JGIAP RH 160 LLC ("Plaintiff") as against the Morali Defendants; and

b. for such other relief as the Court deems just and proper.

3. Based upon my review of the Summons and Complaint (Affirmation of Scott Winikow ("Winikow Aff."), Exhibit A), I understand that Plaintiff brought suit against the Morali Defendants alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and fraud in connection with the services that we performed in connection with the construction of a luxury condominium project (the "Project") located at 160 Imlay Street, Brooklyn, New York (the "Property").

4. Contrary to Plaintiff's contentions, however, the Morali Defendants were not the architect for the Project. (Winikow Aff., Exh. A, Complaint, ¶ 3). The Morali Defendants understood that the Architect of Record for the Project was Antonio Di Oronzo, AIA of Bluarch. Indeed, the Morali Defendants first became involved in the Project in April 2019 when construction of the Project was already well underway.

5. Specifically, at first, MA was retained to provide consulting and expediting services to assist the Property owners Red Hook 160 LLC (the "Owners") in obtaining Temporary Certificates of Occupancy ("TCO") for the Project so that (a) the Owners could avoid default on their loan, and (b) the Owners could comply with the Condominium's Offering Plan and start to close on units in order to generate revenue.

6. The Morali Defendants understand that the Owners were required under its Construction Loan Agreement to obtain a TCO by November 5, 2019 or face default on the loan. (Exhibit A hereto).

7. On behalf of the Owner, the Morali Defendants obtained that TCO by November 4, 2019. It is the Morali Defendants' understanding that as a result of their efforts, the Owner was able to avoid a default in its loan.

8. The Morali Defendants further understand that the Owners were also required to obtain a TCO that permitted residential units to be occupied under the Condominium's Offering Plan prior to the first closing, which was scheduled to occur on November 22, 2019. (Exhibit B hereto).

9. On behalf of the Owner, the Morali Defendants obtained that TCO by November 21, 2019.

10. Thereafter, the Morali Defendants continued to provide consulting and expediting work on the Project as substantial work remained to be performed for the completion of the Project.

11. The Morali Defendants fully performed their services, and only performed their services, pursuant to their agreement.

12. At no time between April 2019 and March 1, 2021 did the Owners, or anyone, complain and/or reject the Morali Defendants' services.

13. The Morali Defendants did not approve any of the payment applications submitted by Co-Defendant Manda International Corp.

14. At no time were the Morali Defendants part of ongoing criminal enterprise that profited from defrauding Plaintiff.

15. The Morali Defendants have no relationship with Plaintiff.

16. To the best of my knowledge, the Morali Defendants have never knowingly made any representations to Plaintiff.

17. For these reasons, I respectfully request that the Court grant Defendants Morali and Associates, Joseph Morali, and Anthony Morali's motion in its entirety and issue and Order dismissing the Complaint with such other relief that this Court deems just.

Joe A. Morali

Subscribed and sworn to before me this
11 day of April, 2022

Notary Public

STEPHEN WILLIG
Notary Public, State of New York
No. 01WI4771839
Qualified in New York County
Commission Expires July 31, 2022

4886-6068-6360, v.2

# EXHIBIT A

**Robert C. Epstein, Esq.**
c/o Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, NY 10001

October 30, 2019

NYC Department of Buildings
Brooklyn Borough Office
210 Joralemon Street
Brooklyn, NY 11201

Re: Loan Agreement between Red Hook 160 LLC ("Borrower") and ACREFI Mortgage Lending, LLC dated May 31, 2018, as amended, providing for Loan ("Loan") for $83.4 Million for Condominium Development at 160 Imlay Street, Brooklyn, N.Y. ("Project")--Default from TCO Delay

Ladies and Gentlemen:

I am counsel to Borrower with regard to the Loan.

This confirms that, subject to extensions described in the referenced Loan Agreement, the failure of Borrower to obtain a temporary certificate of occupancy for the Project by November 5, 2019 is an Event of Default by Borrower under Sec. 8.1a(xxv) of such Loan Agreement.

Sincerely,

Robert Epstein

cc: Massimiliano Senise

# EXHIBIT B




360 Lexington Avenue
New York, New York 10017

Lloyd F. Reisman, Esq.
Main: 212.922.9250 ext. 286
Fax: 212.922.0645
Email: lreisman@ganfershore.com

November 15, 2019

**BY HAND**
New York City Department of Buildings
210 Joralemon Street, 8th Floor
Brooklyn, New York 11201
Attn: Frank Marchiano, DBC

Re: 160 Imlay Street, Brooklyn, New York (the "Property")
The New York Dock Building Condominium

Dear Mr. Marchiano:

We are condominium counsel for Red Hook 160 LLC, which is the owner of the referenced Property and the Sponsor of an offering plan to create the above-captained condominium. We have been asked to confirm certain matters to you on the Sponsor's behalf.

As specifically set forth in this Condominium Offering Plan at page 24 of the Plan:

"Prior to the First Closing, Sponsor shall, at its sole cost and expense, obtain either a permanent or temporary Certificate of Occupancy, which will permit the Residential Units to be used of residential purposes." [Emphasis added.]

The First Closing is currently scheduled for November 22, 2019. Accordingly, it is of paramount importance to the ability to establish this Condominium to have the desired TCO in place in time for that Residential Unit closing to occur no later than that critical date.

If the First Closing does not occur by that critical date, Sponsor will be in default under its construction loan and all construction efforts will come to a halt, including this effort to obtain the desired TCO. If that occurs, the Property is likely to remain vacant for some extended period of time until a new developer is found to assume Sponsor's obligations.

Very truly yours,

Lloyd F. Reisman