UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JGIAP RH 160 LLC,                                        :
                                                        :
                         Plaintiff,                     :
                                                        :               REPORT AND
           -against-                                    :               RECOMMENDATION
                                                        :
CRI HOLDING CORP., TOURAJ NAGHIEH,                       :               No. 21-CV-02489-DG-JRC
MORALI AND ASSOCIATES, ANTHONY MORALI,                  :
JOSEPH MORALI, MANDA INTERNATIONAL                      :
CORPORATION, STRIKEFORCE MECHANICAL                     :
CORPORATION, and ANGELO CORRAO,                         :
                                                        :
                         Defendants.                    :
------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

On May 5, 2021, plaintiff JGIAP RH 160 LLC ("plaintiff") commenced this action

against defendants CRI Holding Corp. ("CRI"), Touraj Naghieh ("Naghieh") (collectively, the

CRI Defendants"), Morali and Associates, Anthony Morali, Joseph Morali (collectively, the

"Morali Defendants"), Manda International Corporation ("Manda"), Strikeforce Mechanical

Corporation ("Strikeforce"), and Angelo Corrao (collectively, the "Manda defendants"),

asserting common law claims and violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  Plaintiff alleges that defendants

fraudulently induced the developer and the lender on a commercial construction project to

overpay defendants.  *See generally* Compl.

Currently pending before this Court, on referral from the Honorable Diane Gujarati, are

three defense motions to dismiss plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  *See generally* CRI Defs. Motion to Dismiss, Dkt. 106;

Morali Defs. Motion to Dismiss, Dkt. 102; Manda Defs. Motion to Dismiss, Dkt. 99.  The

Manda defendants also move for sanctions under Rule 11, 28 U.S.C. § 1927 and the Court's inherent authority.  *See* Manda Defs. Motion for Sanctions, Dkt. 113.  Plaintiff, in turn, cross-moves for sanctions to recover its attorneys' fees and expenses incurred in responding to the Manda defendants' request for sanctions.  *See* Pl. Sanctions Opp. Mem., Dkt. 116.

For the reasons set forth below, this Court respectfully recommends granting defendants' motions to dismiss and denying the cross-motions for sanctions.

## Background

Red Hook 160 LLC ("RH 160") is the owner and developer of a luxury condominium project (the "Project") located at 160 Imlay Street, Brooklyn, New York (the "Property"). Compl. ¶ 1.  On or about December 27, 2019, Churchill 160 Imlay Lender LLC ("Churchill") loaned RH 160 $59 million (the "Mortgage Loan").  *Id.* ¶ 30.  As collateral security for the Mortgage Loan, on or about December 27, 2019, RH 160 and Churchill entered into an assignment agreement (the "Assignment Agreement") whereby RH 160 assigned to Churchill "'all plans and specifications for any work performed at the Premises and all other agreements (including, but not limited to, those with architects, contractors, construction managers, suppliers and the like), plans and specifications and records relating to the construction, development, use, ownership, operation and/or maintenance of' the Project."  *Id.* ¶ 31.  Also, on or about December 27, 2019, Churchill "assigned the Mortgage Loan, together with all [Churchill's] right, title, and interest in and to the Mortgage Loan Agreement and all ancillary agreements, including the Assignment Agreement, to MAM 160 Imlay Lender LLC ('MAM')."  *Id.* ¶ 32.

Defendant CRI markets itself as a "full-service boutique real estate firm that handles sales, rentals, marketing, property management and development of real estate properties in New York City."  *Id.* ¶ 34.  By written agreement dated April 12, 2019, RH 160 engaged defendant

CRI as "Owner's Representative" through the completion of the Project. *Id.* ¶¶ 35-36. Under

that agreement, CRI was to perform due diligence in analyzing the scope of work, reviewing

project plans and specifications, and conducting a thorough site visit. *Id.* ¶ 36. In addition, CRI

was to assist RH 160 in monitoring the progress and quality of work, including adherence to the

approved budget and schedule. *Id.* ¶ 37. CRI was further obligated to review and recommend

whether to approve all invoices, payment applications and change orders submitted. *Id.* ¶ 38.

Initially, CRI was to be paid a monthly fee of $22,000, which would increase to as much as

$44,000 upon completion of certain milestones. *Id.* ¶¶ 40-41. Thereafter, CRI was to continue

to be paid $44,000 per month until a temporary certificate of occupancy was granted for the

entire building. *Id.* ¶ 41. On July 15, 2019, CRI and RH 160 entered into a further agreement

that increased CRI's responsibilities, including daily supervision on site,[1] in exchange for an

additional $30,000 per month. *Id.* ¶ 42.

Defendant Manda formed Strikeforce in May 2019; plaintiff alleges that Strikeforce and

Manda are alter egos. *Id.* ¶ 44. At CRI's insistence, RH 160 directly retained defendant

Strikeforce to perform plumbing work for the Project.[2] *Id.* ¶ 45. In September 2019, RH 160

replaced the construction manager, Star Builders, with defendant Manda as the new construction

manager to evaluate the Project and formulate a budget and a schedule. *Id.* ¶¶ 43, 45-47. On

December 4, 2019, RH 160 and Manda entered into a written agreement (the "CM Contract"),

which provided that Manda would be paid a maximum amount based on the "cost of the work,"

plus an agreed upon fee based on a percentage of the amounts paid to subcontractors. *Id.* ¶¶ 48-

---

[1] Elsewhere in the Complaint, plaintiff alleges that CRI was already obligated to make daily site visits pursuant to the April 2019 agreement. *Id.* ¶ 37.

[2] It is unclear from the Complaint when Strikeforce is alleged to have performed work on the Project.

55.  The guaranteed maximum price acted as a ceiling on the overall contract sum with RH 160. *See id.* ¶ 49.

Plaintiff alleges that CRI, Manda and Strikeforce each breached their contracts with RH 160.  *See id.* ¶¶ 66-75.  Further, plaintiff alleges that Manda and CRI each "lacked the necessary construction expertise, management skills and financial resources to comply with its contractual obligations to complete the Project."  *Id.* ¶¶ 65-66, 69.  Plaintiff alleges that CRI breached the contract by failing to plan and manage the work in a cost effective and economical manner; failing to properly review requisition requests and invoices, which resulted in cost overruns; failing to monitor the quality of the work; and orchestrating a scheme to approve fraudulent change orders and defective work product to prolong CRI's retention and obtain additional fees. *Id.* ¶ 67.

Plaintiff alleges that Manda breached the contract by failing to plan and manage the work in a cost effective manner; failing to properly issue bid packages to subcontractors and enter into written subcontracts that complied with its agreement with RH 160; and failing to provide required back-up documentation for payment applications.  *Id.* ¶ 70.  Both Manda and Strikeforce allegedly overcharged RH 160 for their fees.  *Id.* ¶¶ 73-74.

In addition to the breach of contract by CRI, Manda and Strikeforce, plaintiff further alleges that CRI and its President, defendant Naghieh, led a scheme to defraud the "lender" and RH 160.  *Id.* ¶¶ 76, 77.  To receive its monthly fee more quickly, CRI, as advised by the Morali defendants, "understated both the quantity and quality of the work necessary to complete the Project." *Id.* ¶ 83.  For example, CRI failed to disclose the existence of non-compliance reports issued by the inspector for the Project.  *Id.* ¶¶ 81, 85.  These alleged misrepresentations continued in 2019 when plaintiff's predecessor was underwriting the Mortgage Loan.  *Id.* ¶ 85.

4

CRI sought ways to artificially extend the duration of the Project to benefit itself financially, with the assistance of Manda and Strikeforce.  *Id.* ¶¶ 86, 87.  The typical process for submitting a requisition for payment was for the contractor to submit the requisition to CRI, then to RH 160 and non-party Bluarch, the architect of record for the Project.  *Id.* ¶ 88.  Bluarch would then review and determine whether to approve the requisition for payment.  *Id.*  Next, the requisition would be presented to the lender for its review and approval before payment.  *Id.*

From January 31, 2020 through June 4, 2020,[3] Manda submitted three requisitions for payment for work that was not performed.  *Id.* ¶¶ 87-89 ("unsubstantiated and poorly constructed requisitions").  As to the third requisition for payment, Bluarch raised serious concerns about the invoice lacking documentation and including overinflated claims.  *Id.* ¶¶ 89-90.  Despite the serious issues raised, CRI released funds to Manda for work that lacked adequate support or backup.  *Id.* ¶ 91.  At Naghieh's direction, RH 160 submitted the third requisition to the lender for payment.  *Id.* ¶ 92.  Plaintiff alleges that the lender's construction consultant determined that the third Manda requisition was "impossible to review and confirm," and included rampant overbilling.  *Id.*

In addition, Manda fabricated "change orders" in an attempt to charge in excess of the maximum amount under its contract with RH 160.  *Id.* ¶ 93.  For example, on July 8, 2020, Manda submitted a change order log purporting to show 26 change orders, even though RH 160 had approved only a handful of the change orders.  *Id.*  Moreover, many of the change orders covered work that was within the scope of the work Manda agreed to in its written agreement with RH 160 or included "fictious time entries."  *Id.* ¶¶ 94-96, 105-06.  Plaintiff alleges that

---

[3] The Complaint alternately refers to the third payment requisition as dated June 3 or June 4, 2020.

these change orders were intentionally created to "misrepresent the record in order to induce RH 160 to pay and Lender to advance, monies in excess of the Guaranteed Maximum Price." *Id.* ¶ 99.

In July 2020, RH 160 and the lender examined Manda's third requisition for payment and the lender refused to advance funds for that requisition due to inadequate documentation. *Id.* ¶ 101. In response, in August 2020, Manda filed a Notice of Mechanic's Lien against RH 160, with the County Clerk for Kings County, which plaintiff alleges was "willfully exaggerated." *Id.* After RH 160 served a request for an itemized list of charges underlying the mechanic's lien, on or about November 2020, Manda filed an amended Notice of Mechanics' Lien, reducing the amount that Manda alleged remained unpaid, and mailed the Notice of Lien to plaintiff and the lender. *Id.* ¶¶ 102-03. Plaintiff vaguely alleges that "Lender and RH 160 relied on these misrepresentations to their detriment in paying and advancing funds," *id.* ¶ 108, but plaintiff does not specify whether the amounts included in the mechanic's lien were actually paid by either RH 160 or the lender.

Similarly, Strikeforce filed a Notice of Mechanic's Lien dated August 5, 2020, and mailed the same to RH 160 and the lender, which included change orders for which there was no indication that the orders had been approved. *Id.* ¶¶ 109, 113. Plaintiff alleges upon information and belief that the "change order scheme was endorsed by Naghieh, who processed payments based on the fictitious change orders." *Id.* ¶ 114. Again, it is unclear from the Complaint whether RH 160 or the lender paid the amounts reflected in these change orders since plaintiff alleges that Manda and Strikeforce filed mechanic's liens and the "Lender refused to advance funds on account of the [third] requisition," which remained unpaid. *Id.* ¶ 101.

On June 8, 2021, RH 160 filed a petition against Manda and Strikeforce seeking an

itemization of the mechanics' liens, pursuant to New York Lien Law § 38.  *See* Declaration of

Emanuel Kataev, Esq. in Support of [the Manda Defendants'] Motion To Dismiss ("Kataev

Decl.") ¶ 6, Dkt. 101 & Ex. D, Dkt. 101-4.[4]  The parties have since agreed to withdrawal of the

petition without prejudice.  *See* Status Report at 1, Dkt. 121.[5]

Plaintiff, itself, was formed on February 24, 2021.[6]  *See* Kataev Decl. ¶ 4, Dkt. 101 & Ex.

B, Dkt. 101-2.  On March 10, 2021 (less than 2 months before the Complaint was filed), "MAM

assigned [to plaintiff] the Mortgage Loan, together with all of MAM's right, title, and interest in

and to the Mortgage Loan Agreement and all ancillary agreements, including the Assignment

Agreement."  Compl. ¶ 33.

Plaintiff alleges that Naghieh and CRI orchestrated the fraudulent scheme, the main

---

[4] The court may take judicial notice of complaints filed in state court, in deciding a motion to dismiss.  *See Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (holding that the district court did not err in considering the plaintiff's "Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice"); *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (affirming district court's decision to dismiss complaint by relying on record of state court action).

[5] On July 19, 2023, the Manda defendants filed a pre-motion conference request and informed this Court that during the pendency of their motion to dismiss, they had filed a lien foreclosure action against RH 160 in state court (referred to as "Foreclosure Action").  *See* Letter Motion for Pre Motion Conference, Dkt. 122. The state court dismissed the Foreclosure Action in light of this pending federal action.  *See id*.  This Court respectfully recommends denying the pre-motion conference request as moot given this Court's recommendation granting defendants' pending motion to dismiss.

[6] The Court may properly take judicial notice of public records, such as certificates of incorporation.  *See Weiss v. Sherloq Revenue Sols., Inc.*, No. 19-CV-7103, 2021 WL 965810, at *5 (S.D.N.Y. Mar. 12, 2021)*; Haru Holding Corp. v. Haru Hana Sushi, Inc.*, No. 13-CV-7705, 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016) (taking judicial notice of "the public [e]ntity [i]nformation provided by the New York State Department of State, Division of Corporations Corporate and Business Entity Database"); *see also Lewis v. M&T Bank*, No. 21-CV-933, 2022 WL 775758, at *2 n.4 (2d Cir. Mar. 15, 2022) ("We regularly take judicial notice of agency documents on official websites.").

purpose of which was "to extend the duration of the Project to benefit Naghieh and CRI and permit same to earn fees." *Id.* ¶¶ 151(a), 152.  As the Project Advisors, CRI and Naghieh were responsible for oversight of the Project.  *Id.* ¶ 151(a).  CRI and Naghieh routinely accepted and paid requisitions and change orders they knew to be fraudulent.  *Id.*  As the Construction Manager of the Project, Manda oversaw the day-to-day construction on the Project.  *Id.* ¶ 151(b).  Manda worked with Strikeforce to fabricate invoices and change orders, which they submitted to their "co-conspirators for 'approval' and payment." *Id.*  Strikeforce, as a subcontractor on the Project, was a necessary participant in the scheme because Manda itself was contractually prohibited from performing construction work on the Project.  *Id.* ¶ 151(c).  The Morali defendants were brought in by Naghieh to assume the role of "day-to-day architects," and were essential to creating the appearance of construction activities being completed.  *Id.* ¶¶ 3, 151(d).  The Morali defendants benefited from the fraudulent scheme by increasing their own fees.  *Id.* ¶ 151(d).

Plaintiff alleges the following nine causes of action against various defendants:  (1) a substantive RICO claim against all defendants; (2) a RICO conspiracy claim against all defendants; (3) common law fraud against all defendants; (4) breach of contract against CRI; (5) breach of implied duty of good faith and fair dealing against CRI; (6) breach of contract against Manda; (7) breach of implied duty of good faith and fair dealing against Manda; (8) breach of contract against Strikeforce; and (9) breach of implied duty of good faith and fair dealing against Strikeforce.  Compl. ¶¶ 124-205.

## Discussion

## I.    Legal Standards for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss

for "failure to state a claim upon which relief may be granted[.]"  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the complaint's well-pleaded factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  *See, e.g., Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020); *Sherman v. Town of Chester*, 752 F.3d 554, 560 (2d Cir. 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Lynch*, 952 F.3d at 74.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A plaintiff need not allege "detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).  "[A] formulaic recitation of the elements of a cause of action will not do"; the claim must set forth "more than labels and conclusions[.]"  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  Rule 8 of the Federal Rules of Civil Procedure requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

In evaluating a motion to dismiss, a court may consider (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, and (3) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010) (internal quotation marks and citation omitted) (collecting cases), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

II.     **Liability Under the Substantive RICO Statute**

Plaintiff alleges that all of the defendants constituted a racketeering enterprise that submitted fraudulent payment requisitions to obtain funds advanced by the lender for construction services.  Plaintiff alleges injuries for paying false and fraudulent requisitions and change orders that had been issued or approved by defendants.

The RICO statute provides in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

18 U.S.C. § 1962(c).  Although RICO is a criminal statute, section 1964(c) provides those injured by the conduct proscribed in the RICO statute the right to bring a civil suit for triple damages and costs, including attorneys' fees.  *See* 18 U.S.C. § 1964(c).

As Judge Matsumoto recently observed, "[c]ourts have cautioned that RICO is 'an unusually potent weapon -- the litigation equivalent of a thermonuclear device.'"  *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020) (quoting *Halvorssen v. Simpson*, No. 18-CV-2683, 2019 WL 4023561, at *3 (E.D.N.Y. Aug. 26, 2019)).   "Given the 'powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO' due to 'the allure of treble damages, attorney's fees, and federal jurisdiction,' courts must 'scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'"  *Rajaratnam*, 449 F. Supp. 3d at 64 (quoting *Holmes v. Parade Place, LLC*, No. 12-CV-6299, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013)); *see also Abbott Laboratories v. Adelphia Supply USA*, No. 15-CV-5826, 2017 WL 57802, at *2 (E.D.N.Y. Jan. 4, 2017); *Gross  v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) (surveying civil RICO cases resolved on the

10

merits in the Southern District of New York between 2004 and 2007 and finding that no RICO

plaintiffs succeeded, mostly at the motion to dismiss stage).  For the reasons that follow, having

scrutinized plaintiff's RICO claim in this case, this Court concludes that the Complaint fails to

plausibly allege defendants' liability for the sprawling RICO conspiracy alleged by plaintiff.

### A.      Statutory Standing

Defendants argue that plaintiff's status as a third successor in interest to the Mortgage

Loan means that plaintiff lacks standing to pursue this action.  First, defendants argue that the

purported assignments on which plaintiff relies do not encompass the RICO claims asserted in

this action.  *See* Manda Defs. Mem. at 11, Dkt. 100; Morali Defs. Mem. at 8-9, Dkt. 103.  Absent

the assignments of RICO claims, defendants argue that plaintiff has not identified any direct

injury to its business or property because plaintiff is a stranger to the defendants and the

underlying transactions.  *See* Manda Defs. Mem. at 10-11; Morali Defs. Reply at 4, Dkt. 111.

As an initial matter, "RICO standing," unlike constitutional standing, is not a

"jurisdictional" issue, and is part of the merits analysis under the RICO statute.  *Denney v.*

*Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citing *Lerner v. Fleet Bank, N.A.*, 318

F.3d 113, 129-30 (2d Cir. 2003)).  Thus, the Court considers defendants' argument that plaintiff

lacks statutory standing pursuant to Rule 12(b)(6), not Rule 12(b)(1).  *See Denney*, 443 F.3d at

266; *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 55 (2d Cir. 2004) (explaining that dismissal

for lack of RICO standing was "on the merits" rather than for lack of subject-matter jurisdiction);

*Lerner*, 318 F.3d at 129.

"RICO standing is a more rigorous matter than standing under Article III."  *Denney*, 443

F.3d at 266.  "To satisfy RICO's standing requirements, a plaintiff must demonstrate (1) a

violation of section 1962; (2) injury to business or property; and (3) causation of the injury by

the violation." [7] *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (internal quotations and citation omitted); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994) (quoting *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990)).  "A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation, and only when his or her actual loss becomes clear and definite."  *Denney*, 443 F.3d at 266 (internal quotations marks and citation omitted); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The RICO statute "limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation."  *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994) (citations omitted); *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 259, 266 (1992) (RICO causation requires both "but for" and proximate causation).  "Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirec[t] is insufficient."  *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 771 F. App'x 498, 503-04 (2d Cir. 2019) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)).

### 1.    No Direct Injury

Here, plaintiff does not plausibly allege that it suffered any direct injury caused by defendants' conduct.  It is undisputed that the plaintiff entity was created long after the last alleged predicate act had already occurred, and only three months before the Complaint in this action was filed.  Indeed, plaintiff was not a party to an agreement with any of the defendants.  Accordingly, plaintiff could not have been a target of the alleged scheme.  *See Zap Cellular, Inc.*

---

[7] The questions of statutory standing and proximate cause are intertwined.  *See Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003); *Lerner*, 318 F.3d at 129.

*v. Kurland*, No. 15-CV-682, 2015 WL 8207315, at *5 (E.D.N.Y. Dec. 6, 2015) (finding that

plaintiff lacked standing on its own where it was "formed after the conclusion of any alleged

RICO enterprise, was not the target of the enterprise, and was not injured by it"); *see also In re*

*Am. Exp. Co. Shareholder Litig.*, 39 F.3d at 400 ("shareholders of American Express were

certainly not the intended targets of the RICO violations"). Yet, in the Complaint and plaintiff's

opposition brief, plaintiff attempts to create confusion over these obvious facts by variously

referring to itself and its predecessors, interchangeably, as the "Lender." For example, plaintiff

alleges that requisitions "would be sent to Plaintiff's predecessor in interest in order to induce the

Lender to release funds held back from its loan." Compl. ¶ 16. But, plaintiff defines the term

"Lender" to mean plaintiff. *See* Compl. at 1 ("Plaintiff JGIAP RH 160 LLC ('Lender')"). On

another occasion, plaintiff states in its opposition brief: "In July 2020, Manda's third requisition

remained under heavy scrutiny from **JGIAP** and RH 160, and had not been paid." Pl. Opp.

Mem. at 5, Dkt. 109 (emphasis added). Since JGIAP did not exist until February 2021, plaintiff

should have referred to one of its predecessor lenders. Because JGIAP was formed after the

conclusion of any alleged RICO scheme, was not the target of the purported enterprise, and was

not directly injured by defendants, it lacks standing on its own to bring a claim under RICO.

Even though plaintiff does not explicitly refer to the assignments in addressing

defendants' standing arguments, *see* Pl. Opp. Mem. at 9-10, plaintiff's theory of standing must

implicitly be based on a series of assignments of the Mortgage Loan from RH 160 to Churchill to

MAM to plaintiff. *See* Transcript of Proceedings held on September 3, 2021, before Judge

Gujarati at 19, Dkt. 33 ("As far as the standing issue goes, I think it's fairly simple. The current

plaintiff that I represent has had an assignment of rights that has been handed down multiple

times through multiple entities and now resides with my client."); Compl. ¶¶ 31-33. Absent a

13

valid assignment of tort claims against defendants, plaintiff cannot plausibly allege that defendants made any fraudulent representations directly to plaintiff, and that plaintiff relied on any fraudulent misrepresentations that caused it injury.  *See Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.,* 25 N.Y.3d 543, 550 (2015); *Fox v. Hirschfeld*, 142 N.Y.S. 261, 262-63 (1st Dep't 1913) (absent assignment of tort claims, fraud action remained with assignor since "material false representations were knowingly made to him by the defendant to induce him to purchase the property, and that he relied thereon and was induced thereby to execute the contract").

## 2.   Assignment of RICO Claims

Fraud claims, including RICO claims, are assignable.  *See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 151-53 (2d Cir. 1995) (fraud claims); *Zap Cellular*, 2015 WL 8207315, at *6 (RICO claims "are generally ssignable"); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 228 (E.D.N.Y. 1999) (collecting cases regarding RICO).  However, "the right to assert a fraud claim related to a contract or note does not *automatically* transfer with the respective contract or note." *Commonwealth of Pennsylvania*, 25 N.Y.3d at 550 (emphasis in original).  Absent language demonstrating an intent to assign claims, tort claims do not pass to an assignee.  *See id.* ("Thus, where an assignment of fraud or other tort claims is intended in conjunction with the conveyance of a contract or note, there must be some language -- although no specific words are required -- that evinces that intent and effectuates the transfer of such rights").  "[A]n assignment need not utilize any particular phraseology or form; any act or words are sufficient which show an intention of transferring" the claims to the assignee.  *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976) (internal citations and quotations omitted).  Whether tort claims are

included within the assignment is a matter of contract interpretation.  *See id.*; *Banque Arabe*, 57

F.3d at 152; *Royal Mortg. Corp. v. F.D.I.C.*, 20 F. Supp. 2d 664, 668 (S.D.N.Y. 1998), *aff'd*, 194

F.3d 389 (2d Cir. 1999).  Thus, the threshold issue of standing turns on this Court's interpretation

of the assignments alleged by plaintiff and whether those assignments effectively transferred the

RICO claims from its predecessors to plaintiff.

　　　On or around December 27, 2019, RH 160 obtained a loan from Churchill in the original

principal amount of $59 million.  *See* Compl. ¶ 30.  As collateral security for the Mortgage Loan,

RH 160 and Churchill entered into the Assignment Agreement whereby RH 160 assigned to

Churchill "'all plans and specifications for any work performed at the Premises and all other

agreements (including, but not limited to, those with architects, contractors, construction

managers, suppliers and the like), plans and specifications and records relating to the

construction, development, use, ownership, operation and/or maintenance of' the Project."  *Id.*

¶ 31.  That same day, Churchill assigned the mortgage loan to MAM, "together with all

[Churchill's] right, title, and interest in and to the Mortgage Loan Agreement and all ancillary

agreements, including the Assignment Agreement."  *Id.* ¶ 32.  On or around March 10, 2021

(two months before the Complaint was filed), MAM assigned the Mortgage Loan Agreement to

plaintiff, "together with all MAM's right, title, and interest in and to the Mortgage Loan

Agreement and all ancillary agreements, including the Assignment Agreement."  *Id.* ¶ 33.

　　　To assign tort causes of action, including fraud, an assignment must have "some

expressed intent or reference to tort causes of action, or some explicit language evidencing the

parties' intent to transfer broad and unlimited rights and claims."  *Commonwealth of*

*Pennsylvania*, 25 N.Y.3d at 551.  Here, plaintiff merely alleges that RH 160 assigned to its

lender certain "plans and specifications," "other agreements" and "records" concerning the

construction project at issue.  Where, as here, there is no language in the assignments demonstrating an intent to assign the tort claims at issue, a collateral assignment of construction agreements does not automatically assign the right to bring a tort claim.  Indeed, many courts have found that similar language referring to "rights, title, and interest in and to" an agreement did not result in an assignment of tort claims.  *See Banque Arabe*, 57 F.3d at 152 (holding that phrase "rights, title and interest" did not demonstrate an intent to assign tort claims); *Siegel v. Kontogiannis*, No. 15-CV-2856, 2017 WL 9482101, at *7 (E.D.N.Y. Mar. 14, 2017) (assignment of "'all of the [Siegels'] rights, title, and interest' did not divest the Siegels of any tort claims"), *report and recommendation adopted*, 2017 WL 1169545 (E.D.N.Y. Mar. 29, 2017); *Gruber v. Victor*, No. 95-CV-2285, 1996 WL 492991, at *13-*14 (S.D.N.Y. Aug. 28, 1996) (assignment of "all of [his] right, title and interest" in agreements "was not sufficient to transfer Victor's tort causes of action"); *State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 432 (2000) (holding that assignment of "right, title and interest in, to and under the [loan] documents" did not assign malpractice claims against the attorneys who drafted the loan documents); *Dexia SA/NV v. Stanley*, 22 N.Y.S.3d 833, 833 (1st Dep't 2016) ("agreement to deliver 'all right, title and interest' in [the residential mortgage-backed securities] to the Dexia plaintiffs did not include fraud claims"); *see also Fox*, 142 N.Y.S. at 262-64 (assigning "all my right, title, and interest in and to the within contract" did not assign a cause of action for fraud).

In addition, the circumstances surrounding the assignments are inconsistent with an intention to assign potential fraud causes of action.  *See Commonwealth of Pennsylvania*, 25 N.Y.3d at 552 ("there is no indication that Dresdner and DAF were even aware, at the time of the sale, that any potential fraud claims existed"); *Fox*, 142 N.Y.S. at 264 ("It is manifest that the plaintiff did not intend to assign the cause of action for damages to his wife, because neither at

16

the time of the assignment nor of the execution of the conveyance had the plaintiff discovered

the fraud.").  Here, RH 160, Churchill and MAM could not have contemplated the instant claims

when they executed the assignments on December 27, 2019 because plaintiff did not discover the

alleged fraud until "after the Project ran out of all funds and required a significant

recapitalization" (Compl. ¶ 16) -- long after the original assignments.  In the absence of any

evidence of an intent to transfer related fraud claims, the assignments of the Mortgage

Agreement do not give plaintiff standing to pursue the instant RICO claims.

### 3.    Any Injury Would Be Speculative

Even assuming plaintiff had the right to bring RICO claims pursuant to a valid

assignment from a previous lender, defendants argue that plaintiff has not sufficiently pled any

actual injury.  *See* Manda Defs. Mem. at 11-12 ("neither plaintiff nor RH 160 has paid

defendants any monies under the liens"); Morali Defs. Mem. at 8 ("plaintiff has not alleged that

it sustained any damage").  Without citation to any authority, plaintiff argues that it is not

deprived of standing simply because it "is a lender, rather than the owner of the property at

issue." Pl. Opp. Mem. at 9.  Plaintiff alleges that its injuries "include, but are not limited to,

hundreds of thousands of dollars (if not more than a million) paid as a result of false and

fraudulent requisitions and change orders." Compl. ¶ 156.  Plaintiff further alleges that

defendants' alleged conduct "*jeopardized* the value of the Project and thereby suppressed the

value of Lender's collateral." *Id.* ¶ 16 (emphasis added); *see* Pl. Opp. Mem. at 2 ("JGIAP

suffered injury by advancing funds for construction based on Defendants' fraudulent claims, and

the suppressed value of its collateral.").

Although plaintiff's classification as a lender does not, by itself, disqualify it from having

standing, plaintiff ignores the fact that as a secured creditor, plaintiff's collateral may be

sufficient to make plaintiff whole.  *See First Nationwide Bank*, 27 F.3d at 768; *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) ("[W]hen a creditor alleges he has been defrauded[,] RICO injury is speculative when contractual or other legal remedies remain which hold out a real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced.").  Even if the collateral is insufficient to make plaintiff whole, until plaintiff forecloses on the loan, the value of the collateral cannot be finally determined.  *See First Nationwide*, 27 F.3d at 768 ("the amount of loss cannot be established until it is finally determined whether the collateral is insufficient to make the plaintiff whole, and if so, by how much").  As a result, the creditor's claims are not "ripe for suit."  *Id.*; *see also Am. Home Mortg. Corp. v. UM Sec. Corp.*, No. 05-CV-2279, 2007 WL 1074837, at *3 (S.D.N.Y. Apr. 9, 2007) (plaintiff lacked standing under RICO "based on loans that have not yet been finally foreclosed"); *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 398 (S.D.N.Y. 2000) (finding lack of RICO standing where plaintiffs had not "made any effort whatsoever to recover their alleged losses, or even any part of such losses, by seeking to enforce any of their admitted contractual rights").

Here, plaintiff does not allege that RH 160 has defaulted on the loan or that the value of its collateral has actually decreased.  The possibility that a plaintiff may be injured is insufficient to confer standing under RICO.  *See First Nationwide*, 27 F.3d at 768 ("FNB does not allege actual injury by simply claiming that it incurred additional risk of loss as a consequence of the fraud.").

Because plaintiff cannot yet show "clear and definite damages," it lacks standing to bring the RICO claims.  *See First Nationwide*, 27 F.3d at 768-69 ("a cause of action does not accrue under RICO until the amount of damages becomes clear and definite"); *see also Motorola Credit*

18

*Corp.*, 322 F.3d at 135 (where amount of damages was not "clear and definite," holding that "Plaintiffs lack statutory standing under RICO because their claims are unripe"); *DLJ Mortg. Cap., Inc. v. Kontogianni*s, 726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010) (dismissing RICO claim for lack of statutory standing "where the extent of damages are still unknown, [and therefore] a RICO injury remains speculative and unprovable.").

Although the Court need not address plaintiff's RICO claims further, even if plaintiff had established its standing under RICO, this Court would still recommend dismissing plaintiff's RICO claims for the pleading deficiencies discussed below. *See DLJ Mortg. Cap.*, 726 F. Supp. 2d at 239 n.14 ("In light of [dismissal for lack of standing], the Court need not address defendants' various arguments that DLJ failed to satisfy other pleading requirements in stating its RICO claims.").

### B.    Elements of Substantive RICO Claim

Defendants further move to dismiss plaintiff's substantive RICO claim for failure to state a plausible cause of action because, *inter alia*, plaintiff has not adequately pled (1) that defendants engaged in a pattern of racketeering activity or (2) the existence of an association-in-fact enterprise.  In addition, defendants argue that the RICO conspiracy claim must be dismissed because plaintiff has not plausibly alleged an underlying substantive violation.  For the reasons set forth below, this Court agrees with all of the arguments and further recommends dismissal of plaintiff's RICO claims on those grounds.

To state a civil RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp.*,

LLC, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).  Additionally, the plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c); *see DeFalco*, 244 F.3d at 329; *Lerner*, 318 F.3d at 120.  Predicate acts that sound in fraud or mistake must be pled with particularity as required by Rule 9(b); other elements of a RICO claim, including the existence of an "enterprise," are subject only to the "short and plain statement" standard of Rule 8(a).  *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)); Fed. R. Civ. P. 8(a), 9(b).

### 1.    Pattern

Plaintiff alleges that the association-in-fact enterprise carried out its affairs through a "pattern of racketeering activity."  Defendants argue that plaintiff has failed to demonstrate the requisite continuity of the alleged pattern of racketeering.  *See* Manda Defs. Mem. at 18-20, 22-23; Morali Defs. Mem. at 14; CRI Defs. Mem. at 10-11.  This Court agrees that the allegations in the Complaint are legally insufficient.

The RICO statute requires more than racketeering activity, but a "pattern of racketeering activity."  18 U.S.C. § 1962(c).  A "pattern of racketeering activity" must consist of at least two predicate acts, "the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  However, "while two acts are necessary, they may not be sufficient."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989).  Such racketeering activities must "amount to or pose a threat of continued criminal activity."  *One World, LLC v. Onoufriadis*, No. 21-CV-374, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021); *see also H.J. Inc.*, 492 U.S. at 239.  "'[G]iven the routine use of . . . wire communications in business operations, . . . RICO claims premised on . . . wire fraud' -- as is the case here -- 'must

be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *One World*, 2021 WL 4452070, at *2 (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014)); *Bigsby v. Barclays Cap. Real Estate, Inc.*, 170 F. Supp. 3d 568, 575-76 (S.D.N.Y. 2016) ("predicate acts of mail and wire fraud merit particular scrutiny . . . lest the courts allow the RICO statute 'to federalize garden-variety state common law claims'") (internal citation omitted).

The "continuity" element may be satisfied by either closed-ended or open-ended continuity. *See H.J. Inc.*, 492 U.S. at 241-42. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. Another means of satisfying the "continuity" requirement is "by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

Typically, courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern. *See, e.g., Sehgal v. Aggarwal*, No. 20-CV-4577, 2021 WL 3617479, at *4 (E.D.N.Y. Aug. 16, 2021) ("[C]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.") (internal quotation marks and citation omitted); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, No. 09-CV-3855, 2013 WL 12368698, at *12 (E.D.N.Y. Feb. 19, 2013) ("a single scheme to defraud the two plaintiffs . . . egregious though it may be, does not sufficiently

21

demonstrate a pattern of racketeering activity").  This is because a single narrow scheme with

one victim and limited participants does "not constitute the sort of 'long-term criminal conduct'

that Congress sought to target in RICO."  *Ritter v. Klisivitch*, No. 06-CV-5511, 2008 WL

2967627, at *11 (E.D.N.Y. July 30, 2008); *see also Spool*, 520 F.3d at 186 (holding that

"inherently terminable" scheme does not pose threat of continued criminal activity as required

for open-ended continuity); *Jus Punjabi, LLC v. Get Punjabi Inc*., No. 14-CV-3318, 2015 WL

2400182, at *10 (S.D.N.Y. May 20, 2015) ("discrete and relatively short-lived scheme to defraud

a handful of victims" was insufficient to establish open-ended pattern) (internal quotation marks

and citation omitted), *aff'd*, 640 F. App'x 56 (2d Cir. 2016).

### a.      Closed-ended Continuity

Closed-ended continuity is "primarily a temporal concept."  *One Worlds*, 2021 WL

4452070, at *2 (quoting *Spool*, 520 F.3d at 184).  "Predicate acts extending over a few weeks or

months and threatening no future criminal conduct" do not satisfy the pattern requirement

because Congress was primarily concerned with long-term criminal conduct.  *See H.J. Inc.*, 492

U.S. at 242.  In fact, the Second Circuit has "never held a period of less than two years to

constitute" closed-ended continuity.  *See One Worlds*, 2021 WL 4452070, at *2.  In fact, the

Second Circuit has explained that "it is 'rare' that conduct lasting less than two years will

qualify, especially when 'the activities alleged involve[ ] only a handful of participants and do

not involve a complex, multi-faceted conspiracy.'"  *Id.* (quoting *Spool*, 520 F.3d at 184); *Grace

Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019) ("court must also consider

the number and variety of predicate acts, the presence or absence of multiple schemes, and the

number of participants and victims"); *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc*.,

187 F.3d 229, 242 (2d Cir. 1999) (noting that "factors such as the number and variety of

22

predicate acts, the number of both participants and victims, and the presence of separate schemes

are . . . relevant in determining whether closed-ended continuity exists").

Plaintiff asserts that this is such a "rare" case, identifying a nine-month period between

January 31, 2020 and November 2, 2020, during which defendants engaged in acts of wire and

mail fraud.  *See* Pl. Opp. Mem. at 18-19.  However, plaintiff has not provided any basis for the

Court to depart from the two-year benchmark.  *See One Worlds*, 2021 WL 4452070, at *2.

Plaintiff has not alleged that the purported scheme was "highly complex," or that it involved a

large number of participants.  On the contrary, here, the alleged scheme to create false invoices

and change orders was relatively simple and took place over a short time period, with few

participants.  As summarized in the Complaint:

> Naghieh's scheme was fairly straight forward.  CRI would 'supervise' work at the
> Project.  Manda would provide additional, overlapping supervision.  Manda's alter ego
> Strikeforce would then claim to perform work, or direct subcontractors to perform work
> that would be deliberately deficient.  CRI would sign off on the work as being completed.
> Subsequently, CRI would "discover" that some other aspect adjacent to the work was
> deficient and would authorize Manda and Strikeforce to submit change orders so that
> they could charge multiple times for the same job.

Compl. ¶ 12.  Thus, the alleged scheme here involved a distinct number of predicate acts over a

few months, had one goal (defrauding the owner and lender out of money), had a limited number

of participants and, at most, only two victims.  Under the circumstances, the facts alleged do not

support a finding of a continuous pattern of racketeering activity.  *See MinedMap, Inc. v.

Northway Mining, LLC*, No. 21-CV-1480, 2022 WL 570082, at *1-*2 (2d Cir. Feb. 25, 2022)

(finding no closed-ended continuity where "alleged RICO predicate acts span at most a series of

months, not years" and scheme is not "a large-scale fraud as generally seen in RICO cases");

*One Worlds*, 2021 WL 4452070, at *2 (upholding finding of no closed-ended continuity where

scheme was not complex, predicate acts of wire fraud spanned 15 months, there were a distinct

number of predicate acts, and a single victim); *Grace Intl. Assembly of God*, 797 F. App'x at

605-06 (affirming dismissal of RICO claim brought by owner against contractor who allegedly

submitted fraudulent invoices over 18 months during the course of a construction project); *Spool*,

520 F.3d at 178 (16-month period "insufficient to establish closed-ended continuity --

particularly in the absence of separate schemes or large numbers of participants and victims");

*Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017) (finding no

closed-ended continuity where the scheme lasted less than one year, affected a relatively small

number of victims, and was "narrow in scope because it had one facet -- fraudulent automobile

transactions").

### b.      Open-ended Continuity

Plaintiff also argues that it has established open-ended continuity.  *See* Pl. Opp. Mem. at

19-21.  "To satisfy open-ended continuity, the plaintiff need not show that the predicates

extended over a substantial period of time but must show that there was a threat of continuing

criminal activity beyond the period during which the predicate acts were performed."

*Cofacredit*, 187 F.3d at 242.  "This threat is generally presumed when the enterprise's business is

primarily or inherently unlawful."  *Spool*, 520 F.3d at 185.  However, where the enterprise

conducts primarily legitimate business, "there must be some evidence from which it may be

inferred that the predicate acts were the regular way of operating that business, or that the nature

of the predicate acts themselves implies a threat of continued criminal activity."  *Cofacredit*, 187

F.3d at 243; *see also Grace Int'l Assembly of God*, 797 F. App'x at 606.  Moreover, "a scheme

that was inherently terminable does not plausibly imply a threat of continued racketeering

activity."  *Id*.

Plaintiff's allegations fail to satisfy the requirement that defendants engaged in

"inherently unlawful" activities.  This requirement "primarily targets organized crime" and involves criminal activities such as murder, obstruction of justice, narcotics trafficking, or embezzlement.  *Id.*  "Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity."  *Grace Intl. Assembly of God v. Festa*, No. 17-CV-7090, 2019 WL 1369000, at *8 (E.D.N.Y. Mar. 26, 2019), *aff'd*, 797 F. App'x 603 (2d Cir. 2019); *see United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) ("in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity"); *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21-CV-10597, 2023 WL 374120, at *12 (S.D.N.Y. Jan. 24, 2023) (finding that alleged fraud in the sale of property did not establish open-ended continuity); *CrossBorder Sols., Inc. v. Macias, Gini, & O'Connell, LLP*, No. 20-CV-4877, 2022 WL 562934, at *9 (S.D.N.Y. Feb. 23, 2022) ("it is well established law that fraud does not fall within the 'inherently unlawful' category of predicate acts so as to imply a threat of continued criminal activity").  Here, because the predicate acts alleged sound in fraud, they are not inherently unlawful.

Plaintiff argues that the very purpose of the scheme "threaten[s] continued criminal conduct of the type committed against Plaintiff."  S*ee* Pl. Opp. Mem. at 20-21.  However, plaintiff's argument is purely speculative.  On the contrary, the Complaint alleges a "discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity."  *Confacredit*, 187 F.3d at 244.  Speculative allegations as to how long a fraud would continue does not establish open-ended continuity.  *See MinedMap*, 2022 WL 570082, at *2 ("MinedMap's allegations are largely conclusory and do not allege with the requisite particularity how the fraud scheme would continue into the future"); *One World*, 2021 WL

4452070, at *3 (finding "purely speculative" argument that "nature of the enterprise's course of dealing implies that it would have continued" fraudulent scheme); *Grace Int'l Assembly of God*, 797 F. App'x at 606 (rejecting "concluso[ry] and speculative[]" allegations about threat of continuing activity); *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (rejecting as "entirely speculative" argument that defendant would have continued scheme had plaintiff not commenced litigation).

Moreover, plaintiff has not demonstrated open-ended continuity by alleging that the predicate acts were the enterprise's regular way of doing business.  In fact, plaintiff specifically alleges in the Complaint that the enterprise engaged in "the legitimate business purpose of providing construction services to RH 160."  Compl. ¶ 142; *see id.* ("Defendants have had and do have . . . legitimate business plans outside of the pattern of racketeering activity.").  Plaintiff has not alleged that defendants were each involved in anything other than a primarily legitimate business and plaintiff has not identified any other instance where the association-in-fact enterprise acted in an illegal manner with other real property owners.[8]  *See TAGC Mgmt. LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 47 (2d Cir. 2013) (finding no open-ended continuity where "complaint does not state a criminal goal reaching beyond" plaintiff); *Paul Hobbs Imports*, 2023 WL 374120, at *11-*12; *Kumaran v. Vision Fin. Mkts., LLC*, No. 20-CV-03871, 2022 WL 18774949, at *9 (S.D.N.Y. Aug. 4, 2022) (finding that plaintiff failed to allege open-ended continuity in the absence of other victims of alleged scheme), *report and recommendation adopted*, 2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022); *Grace Int'l Assembly of God*, 2019 WL

---

[8] Plaintiff alleges that defendant Naghieh engaged in two past instances of construction-related fraud.  *See* Compl. ¶¶ 78-79.  However, since those allegations pertain only to Naghieh and did not involve relationships with any of the other defendants, those allegations are not relevant to establishing that the enterprise engaged in a pattern of racketeering activity under RICO.  *See Jus Punjabi*, 2015 WL 2400182, at *9.

1369000, at *8.  Plaintiff's conclusory allegation that the fraudulent scheme was defendants' regular way of conducting business is insufficient.  *See AmBase Corp. v. 111 W. 57th Sponsor LLC*, 785 F. App'x 886, 889 (2d Cir. 2019) (affirming dismissal where plaintiff "only conclusorily asserts" that these schemes were defendants' regular way of doing business); *Cofacredit*, 187 F.3d at 244 (despite allegations that defendants committed mail and wire fraud for nearly one year, "there is insufficient evidence to support a finding that these crimes were a regular means by which [defendants] conducted their plumbing supply business").

Finally, "RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . and is inherently terminable."  *Black v. Ganieva*, 619 F. Supp. 3d 309, 346 (S.D.N.Y. June 30, 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023); *see Spool*, 520 F.3d at 186 (finding that complaint alleges "only a serious, but discrete and relatively short-lived scheme to defraud a handful of victims").  Here, the alleged scheme involved a distinct, "finite construction project."  *See Grace Int'l Assembly of God*, 2019 WL 1369000, at *8.  The scheme was therefore limited to the length of the Project and since its goal was limited to fraudulently obtaining funds from RH 160 and the Lender, the scheme would have ended when the available funds were depleted.  *See MinedMap*, 2022 WL 570082, at *2 ("This is not a fraud scheme that can continue into the future, as it will inherently cease once Maranda or other defendants run [out of] MinedMap's property to sell or the funds from MinedMap's deposit dry up."); *One World*, 2021 WL 4452070, at *3 ("the extent of Defendants' alleged fraud was limited by Chaleplis's capital contributions to One World; in other words, the scheme would have terminated once One World's funds were depleted."); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y 2001) (no open-ended continuity where "[t]he alleged fraud involved was designed to extract money from the Plaintiff.  Given this limited goal, the scheme was inherently

27

terminable."). Notwithstanding plaintiff's claim that defendants sought to extend the Project indefinitely through their fraudulent acts, the nature of the scheme, like the Project itself, was inherently terminable. *See Grace Int'l Assembly of God*, 797 F. App'x at 606 ("Even accepting that the project remained unfinished, Grace's construction project was ultimately terminable.").

Since the Court finds that plaintiff failed to allege a pattern of racketeering activity, it is not necessary to address the defendants' remaining arguments, including the argument that the Court should apply *Colorado River* abstention in favor of an ancillary state court proceeding in *In the Matter of the Application of Red Hook 160 LLC v. Manda Int'l Corp.*, Supreme Court Kings County, No. 513748/2021. *See Sehgal*, 2021 WL 3617479, at *6 (dismissing RICO claim solely on failure to allege pattern requirement). In any event, the ancillary state court proceeding is no longer pending since the parties thereto agreed to withdrawal of the petition without prejudice.

## 2.      Association-in-Fact Enterprise

"The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." *Heinrich v. Dean*, --- F. Supp.3d ---, 2023 WL 1967130, at *3 (S.D.N.Y. Feb. 13, 2023) (quoting *D. Penguin Bros. Ltd. v. City Nat'l Bank*, No. 13-CV-0041, 2014 WL 982859, at *4 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 587 F. App'x 663 (2d Cir. 2014)). A civil RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). If, as here, a RICO plaintiff alleges that an "association in fact" existed among defendants, the enterprise "must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946

28

(2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  For an association of individuals and entities to qualify as an enterprise, they must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)).  "The concept of 'associat[ion]' requires both interpersonal relationships and a common interest" to show that an alleged group "function[s] as a continuing unit."  *Boyle*, 556 U.S. at 946.  Courts in the Second Circuit look to the "hierarchy, organization, and activities" of an association-in-fact to determine whether its members function as a unit.  *See Heinrich*, 2023 WL 1967130, at *4; *see also First Cap. Asset Mgt.*, 385 F.3d at 174 (quoting *United States v. Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991)).

In addition, to establish liability for a substantive RICO violation under section 1962(c), a plaintiff must allege and prove that the "person" or RICO defendant -- including an entity defendant -- is distinct from the alleged RICO enterprise.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162-63 (2001); *First Cap. Asset Mgmt.*, 385 F.3d at 173.  Similarly, the enterprise must exist "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583; *see also First Cap. Asset Mgmt.*, 385 F.3d at 173 ("The enterprise must be separate from the pattern of racketeering activity.").

Based on the Complaint, the alleged enterprise does not exist separate and apart from the pattern of activity in which it is alleged to have engaged against plaintiff.  As noted above, to sufficiently plead an association-in-fact enterprise, a RICO plaintiff must allege facts to plausibly demonstrate that the enterprise, as a whole, was in some way different from and had some existence beyond its constituent members and the underlying pattern of racketeering activity.

*See Jordan v. Tilze*r, No. 21-CV-1938, 2022 WL 16544335, at *1 (2d Cir. Oct. 31, 2022)

(allegations "impermissibly conflate the alleged RICO enterprise with the alleged pattern of

racketeering activity"); *Paul Hobbs Imports*, 2023 WL 374120, at *9; *Festinger v. Snitow*

*Kaminetsky Rosner & Snitow, LLC*, No. 20-CV-9784, 2022 WL 901660, at *20-*21 (S.D.N.Y.

Mar. 28, 2022).  Plaintiff alleges that Naghieh and CRI provided construction advisory services

to RH 160 and that the other defendants helped the CRI defendants defraud RH 160 and plaintiff.

However, here, defendants came together strictly for the purpose of engaging in the alleged

scheme and did not form an association separate and apart from the alleged racketeering activity.

*See Jordan*, 2022 WL 16544335, at *2 (defining association-in-fact enterprise by "defendants'

shared purpose of stealing the primary election . . . impermissibly conflate[s] the alleged RICO

enterprise with the alleged pattern of racketeering activity"); *Eaves v. Designs for Fin., Inc.*, 785

F. Supp. 2d 229, 263 (S.D.N.Y. 2011) (dismissing RICO claim that failed to "allege that

Defendants existed as an association-in-fact separate and apart from the alleged RICO activity,

but rather that [they] came together strictly for the purpose of creating [] allegedly fraudulent tax

shelters"); *Greenberg v. Blake*, No. 09-CV-4347, 2010 WL 2400064, at *6 (E.D.N.Y. June 10,

2010) (complaint alleging association-in-fact enterprise must provide "solid information" to

demonstrate existence of enterprise beyond the individual defendants, acting together); *Kottler v.*

*Deutsche Bank AG*, 607 F. Supp. 2d 447, 458-59 (S.D.N.Y. 2009) (complaint alleged that

defendant lawyers and accountants "came together strictly for the purpose of creating the[ ]

allegedly fraudulent tax shelters" that harmed plaintiffs).

  Based on the allegations in the Complaint, the purported enterprise essentially consists

only of the defendants' scheme to defraud RH 160 and the Lender.  Plaintiff has not alleged any

facts to demonstrate that defendants formed any sort of coherent entity beyond the conclusory

allegations that they simply worked together to perpetrate the allegedly fraudulent scheme. *See Paul Hobbs Imports*, 2023 WL 374120, at *9 (plaintiffs "do not identify the structural features allegedly possessed by Defendants' association-in-fact but instead simply identify the racketeering activity Defendants allegedly engaged in"); *Festinger*, 2022 WL 901660, at *21 ("the Complaint does not allege the existence of any entity, formal or informal, distinct from the Firm Defendants' and Rosenbaum's alleged racketeering acts"); *Aerowest GmbH v. Freitag*, No. 15-CV-2894, 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016) ("A RICO 'association in fact' enterprise requires at least the pleading of an organized entity, and not, as here, pleading only that a group existed to commit fraud."); *Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015) (finding that plaintiff's association-in-fact allegations failed for lack of specific facts from which the court could infer that "the defendants formed an ongoing organization or that defendants formed a coherent entity"), *aff'd*, 651 F. App'x 51 (2d Cir. 2016). In the absence of facts that establish that the enterprise was an ongoing entity, the Complaint does not allege the existence of an enterprise that is distinct from the alleged racketeering acts alleged by plaintiff. *See Jordan*, 2022 WL 16544335, at *2 (allegation that defendants "were organized in a consensual decision-making manner" was "too conclusory to plausibly allege the existence of an association-in-fact enterprise"); *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 304 (E.D.N.Y. 2017) (dismissing civil RICO claim where the complaint alleged only that "the defendants had 'worked together in some respects to steal . . . plaintiffs' funds'"); *Lynn v. McCormick*, No. 17-CV-1183, 2017 WL 6507112, at *5 (S.D.N.Y. Dec. 18, 2017) (plaintiff failed to plausibly allege "how [d]efendants existed as an association-in-fact separate and apart from the alleged RICO activity") *aff'd*, 760 F. App'x 51 (2d Cir. 2019); *Kottler,* 607 F. Supp. 2d at 458-59 (dismissing civil RICO claim because "[t]he enterprise

and the pattern" of racketeering activities were "one and the same").  Indeed, "RICO is not

violated every time two or more individuals commit one of the predicate crimes listed in the

statute."  *Moss*, 258 F. Supp. 3d at 304 (quoting *D. Penguin Bros.*, 587 F. App'x at 668).

A RICO plaintiff cannot merely string together a list of defendants and denominate them

an "enterprise."  *First Cap. Asset Mgmt.*, 385 F.3d at 175 (rejecting "[p]laintiff's conclusory

naming of a string of entities") (internal quotation marks and citation omitted).  "[A]llegations of

parallel conduct alone" are insufficient to raise an inference that the RICO defendants joined

together for a common purpose.  *See Black*, 2022 WL 2374514, at *15.

Here, plaintiff alleges that the various defendants conspired to submit requisitions for

payment based on fictitious change orders for work that was not approved, work that did not

require a change order and work that was never performed.  However, plaintiff has failed to

plead sufficient facts to support its boilerplate claims that defendants are part of an "ongoing

unlawful enterprise," that they "functioned as a continuing unit" or that they associated together

for a "common purpose."  Compl. ¶ 136; *see id.* ¶ 137 ("the members of the Enterprise have had

ongoing relations with each other through common control/ownership, shared personnel and/or

one or more contracts or agreements relating to and for the purpose of purportedly performing

construction services while in fact defrauding each of RH 160 and Lender").[9]  Here, each

defendant is alleged to have defrauded plaintiff for its own benefit,[10] rather than to benefit the

---

[9] Only Manda and Strikeforce are alleged to have common control/ownership.  *See* Compl. ¶ 44.
Although plaintiff alleges that RH 160 entered into contracts with CRI, Manda and Strikeforce,
*see id.* ¶¶ 4, 6, 45, there are no allegations that the members of the enterprise had contracts with
each other.

[10] The Complaint alleges that "Defendants' shared objective was and is to divert funds to their
own benefit."  Compl. ¶ 150.  Further, plaintiff alleges that "[t]he raison d'etre of this fraud was
to extend the duration of the Project to benefit Naghieh and CRI and permit same to earn fees."
*Id.* ¶ 152.

separate enterprise.  There are no allegations in the Complaint that the various defendants are

economically interdependent.  Thus, plaintiff has not provided a basis to infer that each

defendant acted other than for its own self-interest.  *See D. Penguin Bros. Ltd.*, 587 F. App'x at

666 (finding that the plaintiff failed to plead a RICO enterprise when "the complaints fail to

provide a plausible basis for inferring that [the defendants] acted 'on behalf of the enterprise as

opposed to on behalf of [themselves] in their individual capacities, to advance their individual

self-interests'" and stating that "[t]he complaints may adequately plead that [the defendants]

worked together in some respects to steal plaintiffs' funds, but . . . create no plausible inference

that they did so to advance the political agenda of their purported 'enterprise' or for any shared

purpose"*)*; *Heinrich*, 2023 WL 1967130, at *5 (plaintiff alleged that defendants "defrauded

Muzio of her assets to further their own interests, not the interests of a separate eldercare

enterprise"); *Abbott Labs.*, 2017 WL 57802, at *4 ("no alleged facts support an inference that the

entities were acting in any way but in their own independent interests").  Nor has plaintiff

alleged that there are any other victims of the alleged enterprise.  Rather, plaintiff has alleged a

one-time scheme by defendants, which further suggests that defendants acted on behalf of

themselves, rather than the enterprise.  *See Barker v. Rokosz*, No. 19-CV-00514, 2020 WL

32429, at *12 (E.D.N.Y. Jan. 2, 2020) ("the defendants collectively associated with each other

just one time, not on an ongoing basis").

     Finally, plaintiff fails to allege that the defendants had any association with each other

beyond this Project or that any of the defendants engaged in past similar conduct with any of the

other defendants.[11]  *See Boyle*, 556 U.S. at 946 (requiring description of the "relationships

---

[11] The allegations that pertain only to past conduct by Naghieh are not relevant to establishing
that the enterprise engaged in a pattern of racketeering activity under RICO.  *See Jus Punjabi*,
2015 WL 2400182, at *9.

among those associated with the enterprise"); *Abbott Labs.*, 2017 WL 57802, at *4 ("Glaringly absent are allegations of 'interpersonal relationships or common interest.'") (internal quotation marks and citation omitted); *cf. United States v. Eppolito*, 543 F.3d 25, 50 (2d Cir. 2008) ("evidence of prior uncharged crimes . . . may be relevant . . . to prove the existence, organization and nature of the RICO enterprise, and a pattern of racketeering activity by each defendant.").  There are no non-conclusory allegations of any meeting or communication among all the members of the enterprise.  Without factual allegations showing these defendants had an interpersonal relationship in which they worked together for a common illicit purpose, plaintiff's allegations constitute nothing more than the "conclusory naming of a string of entities" combined with legal conclusions.  *See First Cap.*, 385 F.3d at 175; *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) ("no participant is alleged to have acted for the benefit of any other participant," the participants "appear to have had no relationship to one another," and "their actions and involvement in schemes appear to have been isolated and independent").  Given that defendants' association with one another was limited to the alleged scheme to defraud further establishes that the alleged enterprise did not have the longevity necessary to constitute an enterprise.  *See Boyle*, 556 U.S. at 944; *Barker*, 2020 WL 32429, at *12.

A case relied on by plaintiff (*see* Pl. Opp. Mem. at 13-14), *AIU Insurance Co. v. Olmecs Medical Supply, Inc.*, is instructive.  *See AIU Ins.*, No. 04-CV-2934, 2005 WL 3710370 (E.D.N.Y.  Feb. 22, 2005).  In *AIU Insurance*, the plaintiff had alleged that the various prescribing doctor defendants, who formed the enterprise, were alleged to have worked at the same clinics and "consistently prescribe[d] virtually the same combination of [medical supplies] for all Insureds at the same stages of their particular treatment programs."  *Id.* at *13.  The court

34

found that plaintiff had set forth "*in detail* each defendant's necessary and *symbiotic* contribution to the overall scheme." *Id.* at *7 (emphasis added); *see id.* at *1 (describing "the distinct roles of each category of defendant").

In contrast, here, plaintiff has not alleged that the enterprise operated according to any structure or hierarchy or that any of the defendants acted for the benefit of any other defendant. Instead, defendants appear to have had no ongoing relationship with one another, and their conduct in the scheme appears to have been independent and for their own individual benefit. Unlike the defendants in *AIU*, here, there is no indication that the alleged association-in-fact enterprise was an "ongoing organization as opposed to an *ad hoc* collection of entities and individuals." *Cedar Swamp Holdings, Inc.*, 487 F. Supp. 2d at 451; *see also Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 375 (S.D.N.Y. 2022) (plaintiffs "d[id] not plead . . . an ongoing organization" and "the allegations to which they point merely describe separate actions involving various pairs of defendants").

## III.   RICO Conspiracy Claim

Plaintiff has also failed to state a claim for RICO conspiracy.  To plead a RICO conspiracy, a plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions." *Jordan*, 2022 WL 16544335, at *2 (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)); *see also Cofacredit*, 187 F.3d at 244.  This Court finds that plaintiff has failed to plead the necessary agreement to violate RICO's substantive provisions.  *See Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020) ("Plaintiffs' failure to state a claim for a substantive RICO violation is fatal to their RICO conspiracy claim"); *Williams*, 889 F.3d at 126; *First Cap. Asset Mgmt.*, 385 F.3d at 164; *Paul Hobbs Imports*, 2023 WL 374120, at *13.

For the same reasons that plaintiff failed to adequately allege an association-in-fact

enterprise, plaintiff has failed to sufficiently allege an agreement between defendants.  "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."  *Hecht*, 897 F.2d at 25.  When properly pled, an association-in-fact enterprise, by definition, implies an agreement among its constituent defendants, whose association with one another creates the enterprise.  *See U.S. v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009*)* (evidence used to prove "conspiratorial agreement to engage in racketeering" may "coalesce" with evidence used to establish enterprise).  However, a RICO conspiracy claim will not survive a motion to dismiss where the pleading alleges "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations."  *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014).

    As discussed above, the Complaint in this case, while expansive in length, contains only conclusory allegations that the defendants agreed among themselves to violate RICO.  *See, e.g.*, Compl. ¶¶ 160, 161 ("close coordination with one another in the affairs of the Enterprise, and frequent email communications among the Defendants concerning the Project, requisitions and change orders"); 162 ("Each Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the Enterprise's affairs in order to defraud the Sponsor[.]").  Such conclusory allegations of knowledge and agreement are insufficient to state a RICO conspiracy claim.  *See Paul Hobbs Imports*, 2023 WL 374120, at *13 (finding insufficient "conclusory, boilerplate allegation as to the existence of Defendants' alleged agreement to commit a RICO violation"); *Flexborrow*, 255 F. Supp. 3d at 425 (finding that plaintiffs had "only summarily alleged that there was an illicit agreement between" defendants); *Abbott*, 2017 WL 57802, at *9 ("Abbott includes only conclusory allegations that defendants

knew, agreed, or conspired to commit the predicate acts of fraud"); *Wood v. Gen. Motors Corp.*, No. 08-CV-5224,  2015 WL 1396437, at *10 (E.D.N.Y. Mar. 25, 2015) ("Plaintiffs have alleged no facts to show specifically that Defendants had any 'meeting of the minds' with respect to the alleged violations or otherwise violating the law").

Accordingly, this Court recommends dismissal of the RICO conspiracy claim.

## IV.    State Law Claims

The remaining claims brought by plaintiff for breach of contract, common law fraud, and breach of the implied duty of good faith and fair dealing arise under state law.  Because the parties are not fully diverse, the Court lacks original jurisdiction over the remaining claims.  Thus, the Court's jurisdiction over those claims depends on whether the Court exercises supplemental jurisdiction.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  However, a court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c).  The determination of whether to exercise supplemental jurisdiction is within the court's discretion. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).

Typically, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). Given the early stage of this case, this Court recommends declining to exercise supplemental

jurisdiction over the state law claims.  *See Paul Hobbs Imports*, 2023 WL 374120, at *14; *Grace Int'l Assembly of God*, 2019 WL 1369000, at *10; *Flexborrow*, 255 F. Supp. 3d at 426.

**V.      Leave to Amend**

Where a complaint fails to plead a plausible claim for relief, a Court may grant leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should grant leave [to amend] when justice so requires.").  Although plaintiff has not requested an opportunity to amend the Complaint to cure its pleading deficiencies, out of an abundance of caution, the Court recommends granting leave to amend *sua sponte*.  *See Diatek Licensing LLC v. AccuWeather, Inc.*, No. 21-CV-11144, 2023 WL 2632178, at *12 (S.D.N.Y. Mar. 24, 2023); *In re Garrett Motion Inc. Sec. Litig*., No. 20-CV-7992, 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (collecting cases); *S. Illinois Laborers' and Emps. Health and Welfare Fund v. Pfizer Inc*., No. 08-CV-5175, 2009 WL 3151807, at *7 (S.D.N.Y. Sept. 30, 2009) (granting motion to dismiss RICO claim for lack of standing and *sua sponte* granting leave to amend the RICO claim).  In *Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reiterated the "liberal spirit" of amendment under Rule 15 and cautioned strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims.  *Id.* at 190-91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)).

Here, there have been no previous amendments to the Complaint and the Court cannot conclude that plaintiff would be unable to state a RICO claim if permitted a further opportunity to do so.  *See Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (district court did not exceed its discretion in declining to *sua sponte* grant leave to amend where plaintiff had already amended complaint once and amendment would have been futile); *cf.*

38

*Ruotolo v. New York*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming denial of leave to amend "given the previous opportunities to amend").  Moreover, since discovery has not commenced, this case "is still in its infancy, [so] there would be minimal prejudice to Defendant[s]" by permitting amendment.  *See Diatek Licensing*, 2023 WL 2632178, at *12.  Although it is unclear to the Court whether the pleading defects can be corrected, in an abundance of caution, the Court recommends granting plaintiff leave to amend the Complaint.

## VI.   Manda Defendants' Motion for Sanctions

The Manda defendants move for sanctions against plaintiff for a litany of alleged abuses, pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court's inherent powers and 28 U.S.C. § 1927.  *See* Dkt. 113.  For the reasons discussed below, this Court recommends denying the motion for sanctions.

### A.   Rule 11 Sanctions

Under Rule 11(c) of the Federal Rules of Civil Procedure, a court, on a party's motion or on its own, may impose appropriate sanctions on "any attorney, law firm, or party that violated" Rule 11(b) or is responsible for the violation.  Rule 11(b) provides, in pertinent part that:

> By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Rule 11(c)(2) allows a court to award reasonable expenses, including

attorney's fees, to the prevailing party on the motion for sanctions.  *See* Fed. R. Civ. P 11(c)(2); *see also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 242 (S.D.N.Y. 2000).  However, a "court must not impose a monetary sanction [] against a represented party for violating Rule 11(b)(2)."  Fed. R. Civ. P. 11(c)(5).

Rule 11(c)(2) provides a "safe harbor," which gives an attorney a 21-day period to modify or withdraw the challenged submission to avoid sanctions.  *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89-90 (2d Cir. 2003).  The motion for sanctions should initially be served only on the offending attorney, but not filed with the Court.  The motion is ultimately to be filed only if, 21 days after such service, the challenged submission has not been "withdrawn or appropriately corrected."  Fed. R. Civ. P. 11(c)(2).  Rule 11(c)(2) requires "the subject of a sanctions motion be informed of:  (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."  *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)).  "The safe-harbor provision is a strict procedural requirement."  *Star Mark Mgmt.*, 682 F.3d at 175.

The Court may impose sanctions if the attorney responsible for the submission is found to have acted with "objective unreasonableness."  *Pennie & Edmonds LLP*, 323 F.3d at 87; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).  "In other words, Rule 11 is violated if a pleading is submitted for 'any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'"  *Watkins v. Smith*, No. 12-CV-4635, 2013

WL 655085, at *5 (S.D.N.Y. Feb. 22, 2013) (emphasis omitted) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)), *aff'd*, 561 F. App'x 46 (2d Cir. 2014).  Doubts about a pleading's factual or legal viability "are to be resolved in favor of the signer."  *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990); *see K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995); *Bank v. CreditGuard of Am., Inc.*, No. 18-CV-1311, 2020 WL 1516107, at *3 (E.D.N.Y. Mar. 30, 2020).

Even if the court concludes that Rule 11 has been violated, the decision whether to impose sanctions is within the court's discretion.  *See Perez v. Posse Comitatus*, 373 F.3d 321 (2d Cir. 2004); *DeFrancesco v. Mirador Real Est.*, No. 18-CV-4032, 2019 WL 5722120, at *4 (S.D.N.Y. July 15, 2019), *report and recommendation adopted,* 2022 WL 203147 (S.D.N.Y. Jan. 24, 2022).  Where a court finds a Rule 11 violation, the imposition of sanctions is reserved only for "extreme cases."  *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017); *Park v. Seoul Broad. Sys. Co.*, No. 05-CV-8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) (reserving Rule 11 sanctions for "extraordinary circumstances").

The Manda defendants argue that sanctions are warranted because plaintiff's RICO claims have no basis in law or fact and were brought for an improper purpose.  *See* Manda Defs. Sanctions Mem. at 1, 3, 4, 10, Dkt. 114.  Although they do not specify the subsection(s) of Rule 11 that they intend to invoke, the Manda defendants' arguments implicate Rule 11(b)(1), (b)(2) and (b)(3).

### 1.    Rule 11(b)(1)

The Manda defendants argue that plaintiff brought the instant action "in order to attempt to avoid paying for labor and materials that [RH 160] received from Defendants."  Manda Defs. Sanctions Mem. at 3; *see id.* at 4 (suit "is no more than a devious plan concocted by Plaintiff and

Counsel for Plaintiff to attempt to avoid paying Defendants for work performed"). They suggest that plaintiff brought the instant suit in federal court to pressure the Manda defendants into withdrawing their mechanic's liens.

Under Rule 11(b)(1), a claim may not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). However, so long as a complaint is not frivolous, the Second Circuit has found that the filing of a complaint to gain leverage in another litigation was not an improper purpose. *See Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). Likewise, nonfrivolous arguments and contentions are not sanctionable even if the party has "substantially greater resources" than their adversary and uses litigation to exert economic pressure on them. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 393 (2d Cir. 2003). Regardless, even a determination that a complaint is frivolous, standing alone, is an insufficient basis for a finding of improper purpose. *See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 176-77 (2d Cir. 1999) (reversing sanctions imposed on party under Rule 11(b)(1) because court relied on determination that complaint was frivolous); *Omni Elevator Corp. v. Int'l Union of Elevator Constructors and its Loc. 27 Affiliate*, No. 19-CV-6778, 2022 WL 780272, at *9 (W.D.N.Y. Mar. 15, 2022); *see also* 2 *Moore's Federal Practice - Civil* § 11.11[8][e] (2023) (an improper purpose constitutes "something other than mere assertion of frivolous or unfounded legal arguments or contentions that violate Rule 11(b)(2)").

As discussed below, plaintiff's RICO claims are not frivolous. In addition, the Manda defendants have not demonstrated that the Complaint was brought to harass defendants or to cause delay. On the contrary, it appears that the purpose of the suit is obvious and legitimate -- plaintiff contends that defendants are not entitled to the amounts that have been paid, and are

claimed to be due, under the relevant contracts.  To the extent that the Manda defendants argue

that plaintiff brought this suit to pressure them to withdraw their liens, even if true, that does not

establish an improper purpose.  *See Sussman*, 56 F.3d at 459 (suit that was "designed to force the

withdrawal of the Israeli action" was not filed for an improper purpose); *Omni Elevator*, 2022

WL 780272, at *10 (denying sanctions under Rule 11(b)(1) where plaintiff's motive was to delay

enforcement of other courts' judgments until he could secure vacatur of them, which "was

apparent on [the] face [of the Complaint]").  But, even if one of a plaintiff's multiple purposes in

bringing suit is improper, sanctions are not warranted.  *See Sussman*, 56 F.3d at 459.

To the extent that the Manda defendants contend that plaintiff engaged in improper forum

shopping by bringing its RICO claims in federal court, "[a] party's pursuit of a preferred forum

. . . is rarely held sanctionable."  *Black v. Ganieva*, No. 21-CV-8824, 2022 WL 2354916, at *12

(S.D.N.Y. June 30, 2022); *see also Sussman*, 56 F.3d at 457 (expressing "skeptic[ism] . . . that

the commencement of a suit in an inconvenient forum may be the basis of Rule 11 sanctions

where venue was not proper").  As plaintiff pled claims under RICO, albeit insufficiently to state

a viable claim, the suit was properly brought in federal court pursuant to the Court's federal

question jurisdiction.  *See Black*, 2022 WL 2354916, at *3.  The circumstances of this case do

not involve the type of vexatious conduct that some courts have relied on in imposing sanctions

for forum shopping.  *See id.* at *12 (collecting cases); *see also S. Pac. Shipping Co. Ltd. Inc. v.*

*Redi-Fresh Produce Inc.*, No. 14-CV-4157, 2014 WL 6968039, at *10 (S.D.N.Y. Dec. 9, 2014)

(finding improper purpose where plaintiff initially filed related action in the Eastern District of

New York, then withdrew it within a day of defendant's notice of relatedness to the court, then

filed a nearly identical complaint before another state court).

The Manda defendants merely speculate that plaintiff brought this action based on an

improper motive.  To impose sanctions under Rule 11(b)(1), "a court must find clear evidence that . . . the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks and citation omitted).  The Manda defendants have not provided evidence that plaintiff filed the Complaint in bad faith or with an intent to harass, "[n]or are [plaintiff's] claims asserted to be part of a broader series of vexatious filings." *Black*, 2022 WL 2354916, at *12; *see, e.g., Billewicz v. Town of Fair Haven, Vermont*, No. 22-CV-73, 2022 WL 4115966, at *13 (D. Vt. Aug. 11, 2022) ("pattern of abusive litigation . . . gives rise to an inference of improper motives"); *Yong Biao Ji v. Aily Foot Relax Station, Inc.*, No. 19-CV-11881, 2021 WL 431146, at *4 (S.D.N.Y. Feb. 8, 2021) (finding sanctions under Rule 11(b)(1) appropriate where defendants "belabor[ed] the docket with repetitive and vexatious filings"); *LCS Grp., LLC v. Shire LLC*, No. 18-CV-2688, 2019 WL 1234848, at *15-*16 (S.D.N.Y. Mar. 8, 2019) (finding improper purpose where plaintiff filed two actions arising out of the same facts and made objectively unreasonable statements in the second action, in light of the rulings in the first action), *aff'd in part and appeal dismissed in part,* 2022 WL 1217961 (2d Cir. Apr. 26, 2022).  In contrast, here, the nature of plaintiff's claims -- that the defendant submitted false payment requisitions and change orders to obtain payment for work that was not performed -- suggests a proper purpose for bringing suit. *See Black*, 2022 WL 2354916, at *12.  Since the Court "must resolve any and all doubts in favor of the signing party," the Court cannot find that plaintiff commenced this action for an improper purpose. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, No. 11-CV-377, 2014 WL 1572751, at *3 (D. Conn. Apr. 17, 2014) (internal quotation marks and citation omitted); *see also Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, No. 16-CV-7084, 2017 WL 4640149, at *8 (S.D.N.Y. July 26, 2017) (finding that defendant did not establish that plaintiff or its counsel

44

acted with improper motive).

Along with their reply brief, the Manda defendants submitted the transcript of a recorded conversation they claim was held on March 16, 2021 between Justin Ehrlich and Sorabh Maheshwari, Founding Partners of Churchill (the original lender), defendant Angelo Corrao, the owner of defendants Manda and Strikeforce, and Chris Sanders, a Project Manager at Manda. *See* Reply Decl. of Angelo Corrao, Dkt. 118 & Ex. A, Dkt. 118-1.  The Manda defendants contend that the recorded conversation proves that Churchill believed that the Manda defendants "didn't do anything wrong."  Manda Defs. Sanctions Reply Mem. at 1, Dkt. 117.  According to the Manda defendants, this transcript "establishes that this litigation is a pure scam."  *Id.*

First, the Court cannot consider new evidence that was available to the Manda defendants when they filed their original motion papers, but which they waited to file with their reply brief. *See Kravitz v. Binda*, No. 17-CV-7461, 2020 WL 927534, at *4-*5 (S.D.N.Y. Jan. 21, 2020) (finding improper the submission of evidence for the first time on reply), *report and recommendation adopted*, 2020 WL 917212 (S.D.N.Y. Feb. 26, 2020); *Thompson v. Spota*, No. 14-CV-2473, 2019 WL 2602062, at *3 (E.D.N.Y. June 25, 2019) (upholding magistrate judge's determination not to consider evidence improperly submitted on reply); *Monaghan v. Airlines*, No. 16-CV-3528, 2018 WL 3682482, at *4 (E.D.N.Y. Aug. 2, 2018) (declining to consider email submitted in reply papers).  The Manda defendants fail to offer any explanation for waiting until filing their reply to submit the transcript.  Further, it does not appear that the Manda defendants previously disclosed the evidence to plaintiff.  *See* Letter Response in Opposition to Plaintiff's Request to Strike Exhibit A of Defendants' Reply at 2, Dkt. 120.

Second, even if the Court could properly consider the transcript, it does not establish that plaintiff commenced this action in bad faith.  Although Churchill's principals appear to tell

Corrao, at one point in the conversation, that they do not hold him responsible for the delays and

cost-overruns on the Project, other statements made by the same principals are more ambiguous.

For example, later in the same conversation, the principals of Churchill complained to Corrao

"that you cost us 200-400 thousand dollars . . . And you were in and out in 3 months."  Dkt. 118-

1 at ECF page 9.[12]  In addition, quite tellingly, Mr. Maheshwari admitted that Churchill did not

know who was responsible for the problems with the Project:  "The stuff we're hearing is

hearsay, ok?  We don't know what kind of scheme they have."  *Id*.  The conversation set forth in

the transcript does not establish the Manda defendants' contention.  In short, even if the Court

considered the transcript, it would not constitute "clear evidence" that plaintiff commenced this

action in bad faith.

### 2.    Rule 11(b)(2)

When a party's legal contentions are challenged as violating Rule 11, "[t]he operative

question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success,

and there is no reasonable argument to extend, modify, or reverse the law as it stands."  *Fishoff v.

Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (internal quotation marks and citation omitted); *see

also Star Mark Mgmt.*, 682 F.3d at 177; *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir.

1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance

of success.") (internal quotation marks omitted).  The Second Circuit cautions that "[a]

distinction must be drawn between a position which is merely losing and one which is both

losing and sanctionable."  *Sec. Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990) (internal

quotation marks omitted).  As the Circuit has explained, "not all unsuccessful legal arguments

---

[12] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF")
system.

are frivolous or warrant sanction." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). But, "the point at which an argument turns from merely 'losing' to losing *and* sanctionable is often difficult to discern." *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir. 1988) (emphasis in original). "Simply maintaining a claim that does not survive a motion to dismiss is not in and of itself frivolous." *Bank*, 2020 WL 1516107, at *3. "Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy." *DeFrancesco v. Mirador Real Est.*, No. 18-CV-4032, 2019 WL 5722120, at *4 (S.D.N.Y. July 15, 2019) (quoting *Int'l Techs. Mktg., Inc. v. Cognyte Techs. Israel Ltd.*, No. 15-CV-2457, 2022 WL 11280876, at *6 (S.D.N.Y. Oct. 19, 2022)). "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff*, 634 F.3d at 654.

As a preliminary matter, plaintiff correctly notes that of the various issues touched on by the Manda defendants, only the Complaint is a proper subject of a Rule 11 motion. *See Sakon v. Andreo*, 119 F.3d 109, 115 (2d Cir. 1997) ("Imposition of sanctions must be based on a pleading, motion, or other paper signed and filed in federal court.") (internal quotation marks and citation omitted); *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 357 n.10 (S.D.N.Y. 2002) ("a Rule 11 violation must be based on signed pleadings, motions, or other papers"). Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." *Nike, Inc. v. Top Brand Co. Ltd.*, 216 F.R.D. 259, 275 (S.D.N.Y. 2003) (quoting 1993 Amendments, Advisory Committee Notes). The rule "does not reach all abusive conduct by counsel." *Id.*

Moreover, the specific grounds on which the Manda defendants may move for sanctions under Rule 11 are further limited by the scope of the issues explicitly raised in the safe harbor notice. *See StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 311 (2d Cir. 2014) (reversing imposition of sanctions "for conduct beyond that specified" in "instrument by which [defendant] received

notice of his sanctionable conduct"); *Star Mark Mgmt.*, 682 F.3d at 175 (quoting *Schlaifer Nance & Co*, 194 F.3d at 334) ("Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable."); *Storey*, 347 F.3d at 389.  Accordingly, the Manda defendants' Rule 11 motion is limited to arguing that plaintiff's RICO claims are frivolous because it lacks standing and failed to adequately allege "continuity" with respect to the alleged "pattern of racketeering activity."  *See* Affirmation of  Michael J. Mauro, Ex. A, Dkt. 115-1; Manda Defs. Sanctions Mem. at 8.

This Court recommends denying the Manda defendants' motion for sanctions under Rule 11(b)(2).  The Court does not find that plaintiff's RICO claims were "so objectively unreasonable as to warrant the imposition of sanctions."  *Gamelogist Grp., LLC v. Scientific Games Int'l, Inc.*, No. 09-CV-6261, 2012 WL 1446922, at *4 (S.D.N.Y. Apr. 26, 2012); *see Black*, 2022 WL 2354916, at *1 (denying Rule 11 motion for sanctions despite fact that plaintiff's RICO claims "had threadbare factual support and numerous apparent pleading deficiencies"); *see also Fishoff*, 634 F.3d at 654 (affirming denial of sanctions where plaintiff's claims were "not foreclosed *a priori* by binding precedent even if they were unlikely to succeed"); *Bank*, 2020 WL 1516107, at *3 (an unsuccessful "long-shot" legal argument does not necessarily "rise to the level of sanctionable conduct"); *Sid Bernstein Presents,* 2017 WL 4640149, at *8 (failure to state a claim did not mean "the claims were clearly frivolous or were alleged in bad faith").

In those cases where the Court imposed Rule 11 sanctions for frivolous RICO claims, the circumstances were far more compelling.  *See, e.g., LCS Grp.*, 2019 WL 1234848, at *15-*16; *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02-CV-2561, 2003 WL 22227956, at *13 (S.D.N.Y. Sept. 26, 2003) ("If the only deficiencies involved the substantive

48

RICO claims, as opposed to the predicate acts, [plaintiff] would have a much stronger argument. Here, however, the lack of a predicate act for the racketeering activity . . . makes the claim patently frivolous.").

For example, in *LCS*, the court found that the plaintiff mentioned an enterprise "only once in its complaint, in a conclusory sentence, without identifying the specific enterprise," and "failed to allege any facts to support its allegations of RICO predicate acts." 2019 WL 1234848, at *11, *16 n.14.  Moreover, the court found that plaintiff's conduct regarding the RICO claim indicated an intention to harass the defendant, including the plaintiff's failure to oppose a motion to dismiss the RICO claim while also refusing to withdraw the RICO claim with prejudice. *See id.* at *16.

Here, the Manda defendants overstate the weakness of plaintiff's claims.  It is well established that RICO claims are to be "read broadly" to "effectuate its remedial purposes." *Sedima*, 473 U.S. at 497-98.  Although the Manda defendants contend that the RICO statute "requires more than two (2) years of alleged predicate acts," Manda Defs. Sanctions Mem. at 1, there is no such "bright-line requirement."  *One Worlds*, 2021 WL 4452070, at *2; *Spool*, 520 F.3d at 184; *see also U.S. v. Veliz*, 623 F. App'x 538, 543 (2d Cir. 2015) (rejecting argument that a period of less than two years is insufficient as a matter of law).  Indeed, plaintiff cited several cases in its brief where the court found a continuing pattern of racketeering based on schemes that lasted less than one year.  While plaintiff failed to satisfy its burden of demonstrating standing, it was not "patently clear that [plaintiff's claims] had[d] absolutely no chance of success under the existing precedents." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).  The deficiencies in plaintiff's RICO claim do not quite meet that demanding standard.  Resolving any doubts with respect to the viability of the RICO claims in

favor of plaintiff, the Court declines to recommend sanctions under Rule 11(b)(2).

### 3.      Rule 11(b)(3)

It is unclear whether the Manda defendants intended to invoke Rule 11(b)(3), which

requires that "the factual contentions have evidentiary support or, if specifically so identified,

will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery." Fed. R. Civ. P. 11(b)(3). Under Rule 11(b)(3), "sanctions may not be imposed

unless a particular allegation is utterly lacking in support." *Black*, 2022 WL 2354916, at *24

(quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)).

Although the Manda defendants argue that plaintiff failed to allege sufficient facts to

establish a viable RICO claim as a matter of law, they do not identify any specific factual

allegation for which plaintiff did not have support.

### B.      Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Powers

The Manda defendants further seek sanctions against plaintiff and plaintiff's counsel

pursuant to 28 U.S.C. § 1927, and the Court's inherent powers, for "multipl[ying] the

proceedings in this case unreasonably and vexatiously." Manda Defs. Sanctions Mem. at 20.

Under section 1927, "[a]ny attorney or other person admitted to conduct cases in any

court of the United States or any Territory thereof who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

By its terms, "[section] 1927 authorizes sanctions when the attorney's actions are so completely

without merit as to require the conclusion that they must have been undertaken for some

improper purposes, and upon a finding of conduct constituting or akin to bad faith." *Gelcity UK

Ltd. v. Jell-E-Bath, Inc.*, No. 10-CV-5677, 2014 WL 1330938, at *4 (E.D.N.Y. Apr. 1, 2014);

accord *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000).  "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013).

In addition to section 1927, courts also possess the "inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Revson*, 221 F.3d at 78 (internal quotation marks omitted) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Under either the court's inherent authority or section 1927, a court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  *Revson*, 221 F.3d at 79 (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)); *see also Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012); *Eisemann*, 204 F.3d at 396.  "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."  *Gelcity UK Ltd.*, 2014 WL 1330938, at *4; *see also Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985).  Because the standards for sanctions under section 1927 and the court's inherent power are essentially the same, requests for sanctions pursuant to both sources "may be considered together."  *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407, 2022 WL 17685501, at *7 (E.D.N.Y. July 7, 2022); *see also In re Khan*, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015).

Here, plaintiff's conduct does not warrant sanctions under either 28 U.S.C. § 1927 or this Court's inherent powers.  As discussed above, plaintiff's RICO claims are not entirely frivolous. *See Salovaara v. Eckert*, 222 F.3d 19, 30 (2d Cir. 2000) (explaining that bad faith is not

51

equivalent to lack of support, such as where the claims "were supported by . . . good faith arguments to extend, modify, or reverse the law of this Circuit"); *Schlaifer Nance*, 194 F.3d at 337 (explaining "that a claim that fails as a matter of law is not necessarily lacking any basis at all"); *Prospect Cap. Corp. v. Enmon*, No. 08-CV-3721, 2010 WL 907956, at *4 (S.D.N.Y. Mar. 9, 2010) (opposition to the motion to compel arbitration held not to be frivolous even though precluded by clear and controlling precedent in the Second Circuit). But, even if the Manda defendants were correct that plaintiff's claim was entirely meritless, the Manda defendants must also demonstrate bad faith. *See Eisemann*, 204 F.3d at 397. This Court finds no clear evidence that plaintiff acted in bad faith in filing the Complaint or proceeding with the litigation.

Nor can the Court find that "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Revson*, 221 F.3d at 79. Indeed, like Rule 11, under section 1927, courts typically decline to impose sanctions where the purported sanctionable conduct involves the advancement of a novel legal theory or a misinterpretation of the law. *See United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 483 (S.D.N.Y. 2018) ("Where no previous court has considered a particular or novel issue, sanctions under § 1927 generally are disfavored."); *Salvini v. ADVFN PLC*, No. 13-CV-7082 , 2016 WL 1703414, at *4 (S.D.N.Y. Apr. 27, 2016) ("Misunderstanding the law or attempting to extend the law to a novel application is not an appropriate basis for sanctions."); *Classic Tool Design, Inc. v. Castrol Indus. N. Am., Inc.*, 58 F. Supp. 2d 313, 315 (S.D.N.Y. 1999) (declining to award sanctions where the plaintiff's actions were "more nearly reflecting a misunderstanding of the law . . . than as a deliberate insult to the [c]ourt"); *see also Ctr. for Discovery, Inc. v. D.P.*, No. 16-CV-3936, 2018 WL 1583971, at *13 (E.D.N.Y. Mar. 31, 2018) (noting "that the advancement of novel theories or unique interpretations of case law

cannot be the sole basis for Rule 11 sanctions"). Plaintiff's misunderstanding of the law may have resulted in the assertion of a meritless cause of action, but this alone is not grounds for the imposition of sanctions. In sum, while plaintiff's chances of succeeding in this litigation were extremely slim, the arguments presented were neither patently frivolous nor made for an improper purpose. Consequently, the Manda defendants have failed to establish that plaintiff acted in bad faith.

The Manda defendants cite plaintiff's delays in responding to their motion to dismiss as evidence of plaintiff having unreasonably multiplied the proceedings. However, the Manda defendants previously raised the same issues in their request for an order to show cause why defendants' motions to dismiss should not be deemed submitted without opposition. *See* Motion for an Order to Show Cause, Dkt. 72; Minute Entry for hearing held on July 11, 2022 ("7/11/22 Minute Entry"). At that time, the Court denied the request for sanctions against plaintiff and extended the briefing schedule to give plaintiff an opportunity to file an opposition to the motion to dismiss. *See* 7/11/22 Minute Entry. There, the Court accepted plaintiff's counsel's explanations and rejected the Manda defendants' claims of undue delay and bad faith. The Manda defendants have not provided any reason to disturb that prior determination. *See Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (reversing sanction against attorney, where despite her "exasperating conduct" post-settlement and the district court's "frustration at the delay" caused by such conduct, attorney did not act in bad faith). Regardless, plaintiff's delay was not of significant duration, nor did it cause prejudice to the Manda defendants.

Similarly, the Manda defendants contend that plaintiff's change in counsel caused sanctionable delay. *See* Manda Defs. Sanctions Mem. at 2, 5-6. However, the Court also addressed the representation issues at the July 11, 2022 hearing. At that time, Joshua Androphy

confirmed that he would represent plaintiff and Mr. Wilson confirmed that he intended to withdraw as counsel for plaintiff.[13]   Indeed, Mr. Wilson and Mr. Wilson's prior law firm, Armstrong Teasdale, filed motions to withdraw as counsel for plaintiff shortly after the July 11 hearing, which this Court granted.  *See* Motion to Withdraw as Attorney on behalf of Armstrong Teasdale, Dkt. 85; Motion to Withdraw as Attorney on behalf of Ryan Wilson, Dkt. 95; Text Order dated July 26, 2022.  In fact, the Manda defendants did not oppose counsel's withdrawal as long as Mr. Wilson and Armstrong Teasdale remained subject to the Manda defendants' motion for sanctions.  *See* Response in Opposition, Dkt. 90; Response in Opposition, Dkt. 96. The Court finds no basis to sanction former counsel on the grounds that counsel delayed this action.

## VII.   Plaintiff's Cross-Motion for Sanctions

Not to be outdone, plaintiff requests sanctions against the Manda defendants, pursuant to Rule 11, to recover its attorneys' fees and expenses incurred in responding to the Manda defendants' motion for sanctions.  *See* Pl. Sanctions Opp. Mem. at 25, Dkt. 116.  A party defending a Rule 11 motion is not required to comply with the separate document and safe harbor provisions when cross-moving for sanctions.  *See Quinio v. Aala*, No. 15-CV-4912, 2017 WL 8646668, at *7 n.5 (E.D.N.Y. Dec. 21, 2017) (exception to Rule 11's procedural requirements "only applies to Rule 11 cross-motions"); *Lee v. Grand Sichuan E. (N.Y.) Inc.*, No. 12-CV-8652, 2014 WL 199512, at *1 (S.D.N.Y. Jan. 17, 2014).

While "the filing of a motion for sanctions is itself subject to the requirements of [Rule

---

[13] Mr. Wilson had explained that "unforeseen familial circumstances" required his withdrawal from the case.  *See* Letter to Judge Gujarati, Dkt. 73; *see also* Reply letter to Judge Gujarati, Dkt. 84 (explaining that delay in responding to motion to dismiss "is entirely the result of unexpected circumstances with regard to family matters of the undersigned, both emergent and significantly unexpected").

11] and can lead to sanctions[,]" *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 amendments); *see also Gissendaner v. Credit Corp Sols., Inc.*, 358 F. Supp. 3d 213, 225 (W.D.N.Y. 2019), that result is not warranted here.  Plaintiff does not even attempt to establish the requisite burden of proof to prevail on its motion.  Plaintiff has not demonstrated how the Manda defendants' legal arguments are not supported by existing law or were brought for an improper purpose.  Indeed, although the Manda defendants' motion for sanctions is hyperbolic, it is not wholly without merit.  *See McBurnie v. Rutledge*, 646 F. App'x 108, 113 (2d Cir. 2016) (affirming denial of sanctions when "arguments, though close to frivolous, contained enough of a kernel of a theory to avoid being objectively unreasonable") (internal quotation marks and citation omitted); *Kropelnicki*, 290 F.3d at 131 (denying cross-motion for sanctions where motion was "well grounded in fact" and "warranted by existing law"); *ED Cap. LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016) (denying the plaintiff's request for sanctions associated with defending a Rule 11 Motion because motion was not "filed for an improper purpose" and was not "utterly without support").  For these reasons, the Court recommends denying plaintiff's cross-motion for sanctions.

## Conclusion

For the foregoing reasons, this Court respectfully recommends granting the motions to dismiss plaintiff's RICO claims against all defendants, declining supplemental jurisdiction over the state law claims, and dismissing plaintiff's Complaint without prejudice.  This Court further recommends granting plaintiff leave to file an amended pleading within 30 days of a Memorandum and Order adopting the recommendations herein.  Finally, this Court recommends denying the parties' cross-motions for sanctions.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to the recommendations made in this Report must be filed with the Honorable Diane Gujarati within 14 days after the filing of this Report and Recommendation and, in any event, on or before **August 30, 2023**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
      August 16, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge

56